**Arlene C. WOLF–LILLIE, Plaintiff-Appellee,**

v.

**Gerald M. SONQUIST, Kenosha County Sheriff, Defendant-Appellant.**

**Nos. 81–1117, 81–2833.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 14, 1982.

Decided Jan. 31, 1983.

Before PELL, BAUER and WOOD, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

The Sheriff of Kenosha County, Wisconsin, appeals from the judgment of the district court who found that the Sheriff, Gerald M. Sonquist, was legally responsible for damages arising out of the execution of his deputies of an outdated writ of restitution. *See Wolf-Lillie v. Kenosha County Sheriff,* 504 F.Supp. 1 (1980). The writ had been issued in Kenosha County Small Claims Court following an eviction action commenced by Wolf-Lillie's landlord. For the reasons discussed in this opinion, we vacate the judgment of the district court and remand for proceedings in accordance with this opinion.

## I.

Because this case revolves around the untimely execution of a writ of restitution, it may be helpful to first briefly review the procedures which the State of Wisconsin has adopted in order to effectuate the lawful removal of a tenant and his or her property, following an eviction action, from the real property of another.

In Wisconsin, the civil action of eviction is a proceeding to remove the person and property of a person not entitled to the possession or occupancy of real property.[1] If a court finds that a plaintiff is entitled to possession, an order for judgment is entered granting restitution of the premises to the plaintiff.[2] At the same time, the court is required to order that a writ of restitution be issued and delivered to the sheriff for execution.[3] The writ may be executed *only* if delivered to the sheriff within 30 days after entry of judgment.[4]

Bruce E. Schroeder, Schroeder, Bentura & Breitenbach, Kenosha, Wis., for defendant-appellant.

Louis J. Mestre, Legal Act. of Wisconsin, Inc., Milwaukee, Wis., Arlene C. Lillie, pro se, for plaintiff-appellee.

1. *See* Wis.Stat. § 799.40(1).

2. *See* Wis.Stat. § 799.44(1).

3. *See* Wis.Stat. § 799.44(2).

4. *Id.* This 30-day restriction was enacted in order to abolish abuses of writs of restitution. Prior to the enactment of this requirement, a plaintiff, after entering judgment, could continue to collect rent and issue the writ of restitution many months later when the defendant-tenant defaulted on some rental obligation not the subject of the original action. *See* Boden, *1971 Revision of Eviction Practice in Wisconsin,* 54 Marq.L.Rev. 298, 309–10 (1971).

In executing the writ, the sheriff is required to use ordinary care in the removal of persons and property from the premises; however, he or his deputies are authorized to use such reasonable force as may be necessary in accomplishing the removal.[5] Risk of loss and responsibility for storage charges pass to the defendant-tenant after delivery of the goods to a "place of safe-keeping." [6]

Wisconsin law makes it clear that a sheriff has no discretion to withhold execution of the writ. Wisconsin Statute § 799.-45(1) states in applicable part that:

> Upon delivery of a writ of restitution to the sheriff, and after payment to the sheriff of a fee required by § 59.28(24), the sheriff *shall* execute the writ.
>
> *       *       *       *       *       *

Wis.Stat. § 799.45(1) (1979) (emphasis added).[7] Moreover, the sheriff is expressly directed to execute the writ within ten days of its receipt:

> *Within 10 days* of the receipt of the writ, the sheriff *shall* execute the writ and perform all of the duties required by this section and return the same to the court with the sheriff's statement of expenses and charges incurred in the execution of the writ and paid by the plaintiff.

Wis.Stat. § 799.45(5)(a) (emphasis added). The ten-day requirement of execution and return of the writ, as the district court

concluded in this case, is mandatory and goes directly to the validity of the writ itself. 504 F.Supp. at 4.[8] Lastly, all the rights and duties of the sheriff in executing a writ of restitution may be exercised by or delegated to any of his deputies.[9]

It is from the untimely execution of a writ of restitution and the attending loss of the plaintiff's property that this lawsuit arises.

## II.

Arlene C. Wolf-Lillie owned a mobile trailer-home, in which she resided and kept her personal belongings. The trailer home was located on a lot in the Lakecrest Mobile Home Park in Silver Lake, Wisconsin. Wolf-Lillie rented this lot from the owner of the park, Gary McDonald.

As a result of an eviction action brought by McDonald against Wolf-Lillie, the Kenosha County Small Claims Court, on March 2, 1977, entered a judgment of eviction against Wolf-Lillie. Nine days later, on March 11, 1977, the same court issued a writ of restitution ordering the Sheriff of Kenosha County to remove Wolf-Lillie and her property from the lot she occupied in the park. The writ was received by the sheriff's department on March 22, 1977. A copy of the writ was served on Wolf-Lillie on March 28, 1977. This copy contained an interlineation giving her five days to voluntarily remove herself from the property.

---

5.  *See* Wis.Stat. § 799.45(2).

6.  *See* Wis.Stat. § 799.45(3).

7.  There is nothing in the record to suggest that the fee required to be paid to the sheriff pursuant to Wis.Stat. § 59.28(24) was not timely and properly paid.

8.  This conclusion, not disputed on appeal, appears to be a correct interpretation of Wisconsin law. In determining whether a statutory provision is mandatory in character, Wisconsin case law indicates that a number of factors must be examined. *See State v. Rosen,* 72 Wis.2d 200, 207, 240 N.W.2d 168 (1976). *See also Liberty Loan Corp. & Affiliates v. Eis,* 69 Wis.2d 642, 646, 230 N.W.2d 617 (1975). Among these are the objectives sought to be accomplished by the statute, its history, the consequences which would follow from alternative interpretations, and whether a penalty is imposed for its violation. *State v. Rosen, su-*

*pra.* Here, the ten-day execution requirement seeks to provide a prompt conclusion to the eviction proceeding. The ten-day requirement also seeks to prevent removal of tenants at a later date for grounds other than what was at issue at the eviction proceeding. The statute was enacted to cure former abuses in the system. 504 F.Supp. at 4. *See also* Boden, *1971 Revision of Eviction Practice in Wisconsin, supra,* 54 Marq.L.Rev. at 309–10. Lastly, the Wisconsin legislature created a procedure for acquiring stays of writs of restitution, thereby insuring that eviction procedure would remain in the hands of a judge, not a local sheriff. *See* Wis.Stat. § 799.44(3). These factors, in aggregate, indicate that the ten-day execution requirement of Wis.Stat. § 799.45(5)(a) is mandatory in nature.

9.  *See* Wis.Stat. § 799.45(3)(d).

On April 22, 1977, one month after receipt of the writ by the sheriff's department, deputy sheriffs executed the writ.[10] Despite Wolf-Lillie's claim that the writ was outdated and invalid, the deputies had Wolf-Lillie's trailer and personal property removed from the Mobile Home Park. The mover who had been hired by the County, Bud DeBoer, repeatedly asked Wolf-Lillie to where she wanted her trailer moved. The plaintiff, because of her objection to the seizure of her property, refused to designate a storage place for the trailer. DeBoer consequently towed the trailer to his Service Center storage yard. There, the trailer was secured, locked, and placed outside of a fenced-in area of his yard.

In the months that followed, DeBoer repeatedly attempted to get Wolf-Lillie to tell him where to move the trailer. The plaintiff, however, continued to insist that it be returned to its original roost at the Mobile Home Park. Throughout this time, Wolf-Lillie had access to her trailer and, although she had found a new place of residence, continued to store personal goods such as clothing in the trailer.

Finally, in January of 1979, DeBoer sold the trailer and its contents; the trailer was removed from his premises later that spring. DeBoer realized $881.01 from the sale of the trailer. The total bill for the storage of the trailer in DeBoer's lot was $3,206.00, apparently leaving a total of $2,324.99 due to DeBoer from Wolf-Lillie.

The plaintiff by this time had commenced suit in district court alleging that the Sheriff of Kenosha County was liable for all damages arising out of the execution of the outdated writ of restitution. Ultimately, Wolf-Lillie, through court-appointed counsel, sought damages for the loss of her trailer, the loss of the contents of the trailer, and the storage costs she had incurred. In addition, she sought damages for the

violation of her constitutional right to be free from unreasonable seizures, for the emotional distress she suffered over the three-year period, and for personal inconvenience. A bifurcated bench trial was held before Judge Warren.

The court held that the writ of restitution, executed thirty-days after receipt by the sheriff, was invalid when executed. 504 F.Supp. at 4. The court also held that under Wisconsin law Wolf-Lillie had a protectable property interest in remaining in possession of the lot she occupied. 504 F.Supp. at 3. Accordingly, the court ruled the execution of the invalid writ violated the plaintiff's right to due process under the Fourteenth Amendment. 504 F.Supp. at 5. The court also concluded, after completing the damage portion of the trial, that Wolf-Lillie's substantive right to be free from unlawful seizures as secured by the Fourth Amendment had been violated. 504 F.Supp. at 11–12.

The district court then addressed the issue of the sheriff's liability. The court concluded that, based on the evidence presented at trial, there existed in the Kenosha County Sheriff's Department a pervasive pattern or practice of executing stale writs of restitution, resulting in the violation of constitutionally protected rights. 504 F.Supp. at 7. Moreover, the court held that there existed an "affirmative link" between the existing unlawful pattern of conduct and the conduct of the sheriff in that the sheriff failed to supervise the process division and to prohibit the execution of stale writs. *Id.* The sheriff was therefore held liable for the damages resulting from the execution of the outdated writ in this case.

After the damage portion of the trial, the district court ruled that Wolf-Lillie was entitled to $9,000.00 in damages and $9,451.00 in attorney's fees.[11] As a special condition

---

**10.** Evidence at trial revealed that the sheriff, Gerald M. Sonquist, played no part in the execution of this writ. Apparently, the execution of writs of restitution by the Kenosha Sheriff's Department, including the one executed in this case, were handled entirely by deputy sheriffs.

**11.** The damage award was broken down into the following categories: $3,000.00 for the loss of the trailer; $1,000.00 for physical inconvenience; $1,000.00 for emotional distress and humiliation; and $4,000.00 for injury to her constitutional rights. On appeal, no claim has

to the damage award, the district court ordered that the defendant directly pay to the court the $9,000.00 damage award. If the plaintiff failed to execute a satisfaction of the judgment within 45 days of the delivery of the award to the court, the district court would then order its judgment vacated and would dismiss the plaintiff's complaint on the merits. This condition was apparently necessary to protect the defendant from any judgment liens, in that Wolf-Lillie had maintained throughout the damage portion of the trial that she would not accept any monetary damages from the defendant nor would she execute a satisfaction of judgment. The plaintiff had ardently demanded that her trailer be returned to her, an event the district court repeatedly told her it had no authority to order. The action proceeded nonetheless. No such condition was placed on the payment of the attorney's fees.

On appeal, the sheriff raises three issues. First, the sheriff argues that the district court erred in finding that the sheriff was liable, in his supervisory capacity, for the losses sustained by Wolf-Lillie. The sheriff also argues that under *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the plaintiff's remedy for her injuries lies in Wisconsin common law tort procedures. Lastly, the sheriff claims that the attorney's fee award should have been included in the 45-day satisfaction of judgment condition created by the court. The sheriff argues that should Wolf-Lillie fail to satisfy the judgment within 45 days, both the damage award *and the attorney's fee award* should be vacated.

### III.

The first issue we shall address is the sheriff's contention that he should not be held personally liable for the actions of his deputies. As we previously noted, the district court found that Sonquist, as a supervisory officer, was liable for Wolf-Lillie's damages because there existed (1) a pervasive pattern of executing untimely writs by the Sheriff's Department and (2) an affirmative link between the actions of the deputies (in executing untimely writs) and the sheriff's failure to supervise the process division. The sheriff contests both prongs of the district court's analysis.

Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation. *McBride v. Soos,* 679 F.2d 1223, 1227 (7th Cir.1982); *Adams v. Pate,* 445 F.2d 105, 107 (7th Cir.1971). Pursuant to this requirement, courts have rejected § 1983 claims based upon *respondeat superior* theory of liability. *See Polk Co. v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981); *Iskander v. Village of Forest Park,* 690 F.2d 126, 128 (7th Cir.1982) (cases cited therein). Without a showing of direct responsibility for the improper action, liability will not lie against a supervisory official. A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary. *Rizzo v. Goode,* 423 U.S. 362, 371, 96 S.Ct. 598, 604, 46 L.Ed.2d 561 (1976). In this case, the district court found such an affirmative link in the sheriff's personal failure to supervise the process division. This finding, however, was unnecessary, as the plaintiff's suit was not directed against the sheriff in his *individual* capacity but was instead directed against the Sheriff of Kenosha County, in his *official* capacity.[12] A different analysis is thus required.

been made regarding the propriety of this damage award.

As part of this damage award, the district court addressed the issue of mitigation of damages. The court opined that because Wolf-Lillie's financial status at the time of the wrongful seizure was such that she could not afford to rent a place to relocate her trailer, her failure to move the trailer while it was in storage does not foreclose her from recovering for its loss. 504 F.Supp. at 10. This conclusion has also not been challenged on appeal.

12. Wolf-Lillie has made it clear that her suit is directed against the Kenosha County Sheriff. Her complaint listed "Kenosha County Sheriff" as the defendant, as did all papers submitted to the district court throughout the course of the

As an official capacity suit, the action against the sheriff is merely another form of claim against the government entity itself. *Monell v. Department of Social Services,* 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978); *Kincaid v. Rusk,* 670 F.2d 737, 741 (7th Cir.1982); *Familias Unidas v. Briscoe,* 619 F.2d 391, 403 (5th Cir.1980). Damages may be awarded against a defendant in his official capacity only if they would be recoverable against the governmental entity. *Monell, supra; Hughes v. Blankenship,* 672 F.2d 403, 406 (4th Cir.1982). The law is clearly established that a local governmental entity, such as Kenosha County, will be liable when through the execution of a government's policy or custom, whether made by its law-makers or by those whose edicts or acts may fairly be said to represent official policy, another's rights are violated. *Monell, supra* 436 U.S. at 694, 98 S.Ct. at 2037; *Powe v. City of Chicago,* 664 F.2d 639, 649 (7th Cir.1981). While the question of what actions constitute a "policy or custom" is not fully resolved by the courts, *see Bowen v. Watkins,* 669 F.2d 979, 989 (5th Cir.1982), it is clear that a well-settled municipal practice can establish a "custom or usage" with the force of law. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 169, 90 S.Ct. 1598, 1614, 26 L.Ed.2d 142 (1970). Liability may be predicated pursuant to a governmental "custom" even though such a custom has not received formal approval through the body's decision making channels. *Monell, supra* 436 U.S. at 690–91, 98 S.Ct. at 2035–36. As Justice Harlan noted in *Adickes,* "settled practices of state officials may ... transform private predilections into compulsory rules of behavior no less than legislative pronouncements." *Adickes, supra* 398 U.S. at 168, 90 S.Ct. at 1614. Informal actions, if they reflect a general policy, custom, or pattern of official conduct which even tacitly encourages conduct depriving citizens of their constitutionally protected rights, may well satisfy the amorphous standards of § 1983. *See Web-ster v. City of Houston,* 689 F.2d 1220, 1227 (5th Cir.1982).

The evidence adduced at trial clearly showed a widespread practice of executing outdated writs by the sheriff's department. Statistically, for the three-year period from January 1, 1976 to December 31, 1978, the sheriff's department had executed 119 writs of restitution. Of these 119 writs, 68 were executed beyond the ten-day period. Deputy Sheriff Wayne Gransow, who often executed writs of restitution, testified that writs would be executed beyond the ten-day requirement as a common practice, often at the request of counsel. Gransow estimated that approximately twenty-five percent of the writs of restitution were executed beyond the ten-day period. The existence of this policy was apparently known to Sheriff Sonquist, as indicated in his statement, which the district court implicitly credited with reliability, that after conducting an inquiry into the Process Division following the commencement of Wolf-Lillie's action, Sonquist discovered nothing that he was unaware of prior to the suit. The record, in fact, contains no evidence contradicting the district court's conclusion that there existed a pervasive pattern of executing invalid writs of restitution. It was pursuant to this custom or practice of executing invalid writs that the plaintiff suffered the unauthorized seizure of her property. Accordingly, the sheriff, in his official capacity, must shoulder responsibility.

## IV.

The next issue we must address is the sheriff's contention that in light of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), Wolf-Lillie has shown no constitutional violation cognizable under § 1983.

In this case, the district court predicated liability upon two distinct grounds. First, the district court concluded that the plaintiff had been deprived of her property with-

litigation. The district court's final order and judgment was directed against the "Kenosha County Sheriff." On appeal Wolf-Lillie contin-

ues to maintain that her suit is against the sheriff in his official capacity, not in his individual capacity.

out due process, thereby violating the Fourteenth Amendment. 504 F.Supp. at 5. Second, the court found that Wolf-Lillie's Fourth Amendment rights had been "grievously" violated by the unlawful seizure of her property. 504 F.Supp. at 11–12.[13] To these conclusions we must apply the *Parratt* analysis.

In *Parratt,* a Nebraska prison inmate alleged that state officials, who had negligently lost his hobby kit, deprived him of property without due process of law. *See* 451 U.S. at 530–31, 101 S.Ct. at 1910–11. The Supreme Court held that the property deprivation in question did not violate due process because Nebraska law provided an adequate remedy for the deprivation. *Id.* at 544, 101 S.Ct. at 1917. Under this procedural due process analysis, the inmate's complaint did not state a cognizable section 1983 claim. The *Parratt* decision thus requires federal courts to consider the adequacy and availability of remedies under state law before concluding that a deprivation of life, liberty, or property violates due process of law. *See Ellis v. Hamilton,* 669 F.2d 510, 515 (7th Cir.1982).

The *Parratt* decision clearly applies to Wolf-Lillie's claim that she was deprived of her property without due process of law. Although Wolf-Lillie was deprived of her property under color of state law, there is nothing to suggest that the particular tort remedy provided by Wisconsin law fails to satisfy due process. *See* Wis.Stat. § 893.80. Through the availability of this state tort remedy, Wisconsin has done all that the Fourteenth Amendment requires in this context to guarantee Wolf-Lillie due process of law. The district court's conclusion that Wolf-Lillie was denied due process therefore must not stand.[14]

Application of *Parratt* to substantive violations of the Constitution, such as the Fourth Amendment violation found to exist in this case, however, is an entirely different matter. A finding that governmental action violated an independent substantive right secured by the Constitution is substantially different from a ruling that such action deprived a citizen of his right to procedural due process. *Owen v. Lash,* 682 F.2d 648, 651 (7th Cir.1982). *See also Freeman v. Franzen,* 695 F.2d 485, at 493 (7th Cir.1982). As Justice Stewart noted for this Court in *Owen,* a determination that some action violated a citizen's right to procedural due process is merely a condemnation of the procedures that attended the action and not an assessment of the constitutionality or propriety of the action itself. *Id.* at 652.

In *Parratt,* no cognizable section 1983 claim was alleged because Nebraska law, by providing an adequate remedy for the deprivation, satisfied the requirements of procedural due process. The inmate's allegations concerned a violation of due process; they did not implicate any of the substantive constitutional guarantees made applicable to the states by the Fourteenth Amendment. *See Parratt v. Taylor, supra,* 451 U.S. at 536, 101 S.Ct. at 1913. This point was highlighted by Justice Blackmun, who noted in concurrence that:

til the damage portion of its order in no way detracts from its ultimate validity. Furthermore, damages were specifically awarded for the violation of the Fourth Amendment. We also note that other than its location in the district court's order, the appellant does not contest the validity of the district court's conclusion that Wolf-Lillie's Fourth Amendment rights have been violated.

14. In so holding, we expressly note that we withhold comment on the district court's analysis and conclusion that under Wisconsin law Wolf-Lillie had a protectable property interest in remaining in possession of the lot she occupied.

13. This second basis of liability is found in the damages portion of the district court's bifurcated order. 504 F.Supp. at 11–12. The initial district court order on liability was entirely devoted to the due process violation, with no mention being made of the substantive violation of the Fourth Amendment. 504 F.Supp. at 1–8. The appellant Sheriff thus questions the validity and applicability of the Fourth Amendment violation conclusion.

While there is no doubt that the district court's order is less than perfectly organized, the order is clear that liability is predicated upon two distinct and separate grounds. The mere fact that the district court did not make the finding of Fourth Amendment violation un-

I do not read the Court's opinion as applicable to a case concerning deprivation of life or liberty . . . .

Most importantly, I do not understand the Court to suggest that the provision of "post-deprivation remedies" . . . within a state system would cure the unconstitutional nature of a state official's intentional act that deprives a person of property.

*Id.* at 545–46, 101 S.Ct. at 1917–18 (Blackmun, J., concurring). *See also id.* at 552–53, 101 S.Ct. at 1921–22 (Powell, J., concurring in result). *Parratt* is thus not applicable to instances where the substantive guarantees of the Constitution are alleged to be violated, as opposed to alleged violations of procedural due process.[15] Federal and state courts in effect have concurrent jurisdiction over torts based on substantive constitutional guarantees. *Al-Mustafa Irshad v. Spann,* 543 F.Supp. 922, 926 (E.D.Va.1982). Accordingly, the district court's conclusion that Wolf-Lillie's substantive Fourth Amendment rights were violated must not be disturbed on grounds of *Parratt.*[16]

### V.

The final area we have been asked to address concerns the structure of the attorney's fee award.

Throughout the course of the lawsuit, the plaintiff, who was represented at trial by Legal Action of Wisconsin, Inc., personally maintained that she would not satisfy any judgment which awarded her money damages. In her view, the only relief acceptable would be the actual return of her trailer to the location from which it was taken, as well as the criminal prosecution of her former landlord. Despite these views, the lawsuit proceeded through trial and judgment.

In light of Wolf-Lillie's position on damages, the defendant, after the district court had made its liability findings, became concerned that the plaintiff would not execute a satisfaction of the judgment upon ultimate tender of payment. Without such a satisfaction, under Wisconsin law the judgment would act as a lien upon the real property of the defendant.[17] Accordingly, the district court imposed certain conditions on the plaintiff in the court's order on damages in an attempt to "insure that the defendant receives a satisfaction of judgment." 504 F.Supp. at 12. The court ordered the defendant to pay into the court the sum of $9,000.00 and that:

the Court shall keep this sum until such time as the plaintiff executes a satisfaction of judgment to the defendant, but in no event will the Court keep this open for any period in excess of 45 days after the delivery of the sum to the Court. Furthermore, if plaintiff fails to execute the satisfaction of judgment within the 45-

---

**15.** This conclusion is consistent with the Fifth Circuit's decision in *Duncan v. Poythress,* 657 F.2d 691, 705 (5th Cir.1981), *cert. granted,* 455 U.S. 937, 102 S.Ct. 1426, 71 L.Ed.2d 647 (1982). *See also Al-Mustafa Irshad v. Spann,* 543 F.Supp. 922, 926 (E.D.Va.1982); *Howse v. DeBerry Correctional Institute,* 537 F.Supp. 1177, 1180 (M.D.Tenn.1982). Whether the Supreme Court will reach the *Parratt* issue in *Duncan* is unclear. *See* 51 U.S.L.W. 3044 (August 3, 1982).

**16.** Our conclusion that Wolf-Lillie has not shown a cognizable violation of due process does not require a redetermination of damages by the district court on remand. Although the district court's order was premised on the violation of both due process and the Fourth Amendment, the court's computation of damages was clearly calculated with the Fourth Amendment violation in mind. *See* 504 F.Supp. at 11–12. Moreover, the $4,000.00 awarded under the subsection "Injury to Constitutional Rights" has not been contested on appeal. We thus see no need to disturb the district court's damage award.

Similarly, the $9,451.00 awarded as attorney's fees need not be redetermined on appeal. Because Wolf-Lillie continues to prevail on the merits of this lawsuit essentially as she did in the district court, diminution of the amount awarded as fees is unnecessary. Moreover, we note that the amount of the attorney's fees award has not been challenged on appeal.

**17.** Wis.Stat. § 806.17 provides in pertinent part:

Every judgment and decree requiring the payment of money rendered in a District Court of the United States within this State shall be, from the docketing thereof in said Court, a lien upon the real property of the judgment debtor situated in the county in which it is so docketed, the same as a judgment of the state court.

\* \* \* \* \* \*

day period, the Court will order its judgment vacated and will dismiss this action on the merits.

504 F.Supp. at 12. When the plaintiff later applied for attorney's fees, the defendant requested that any fee award be ordered to be paid *only* upon presentation of the satisfaction of judgment, as had been provided in the judgment order for damages. The district court denied this request, stating that because the legal fees were to be paid directly to Legal Action, there was no need for such a similar condition. On appeal, the sheriff argues that the attorney's fee award should have had the same conditions placed upon it as had the damage award. Before reaching this issue, however, we must first consider the propriety of the district court's 45-day satisfaction of judgment requirement.

As previously noted, the district court created this 45-day satisfaction requirement in order to insure that the judgment would not act as a lien upon the real property of the defendant. While we understand the solicitude the district court displayed to the interests of the defendant (who appears to be willing to tender payment of the judgment), it was unnecessary to structure the judgment award in such a fashion because there does exist in this case established procedures for dealing with the plaintiff's obstreperousness.

Rule 69 of the Federal Rules of Civil Procedure provides procedures for the enforcement of a money judgment entered in federal court. This rule provides in pertinent part that:

\*　\*　\*　\*　\*　\*

The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held

\*　\*　\*　\*　\*　\*

Rule 69, Fed.R.Civ.P. We must accordingly look to the law of Wisconsin, which does indeed provide the solution, via statute, for the problem presented in this case.

▆▆ In Wisconsin, one of the ways in which a judgment debtor may pay a money judgment is to directly deposit with the clerk of the court in which the judgment was entered the amount of liability. *See* Wis.Stat. § 806.19(3). The court then has the authority, in situations such as this, to direct that a satisfaction be entered upon the docket. Wisconsin Statute § 806.20(1) provides that:

When a judgment has been fully paid but not satisfied or the satisfaction has been lost, the trial court may authorize the attorney of the judgment creditor to satisfy the same or may by order declare the same satisfied and direct satisfaction to be entered upon the docket.

Wis.Stat. § 806.20(1). The effect of this court-ordered satisfaction is that the judgment will cease to be a lien upon the property of the judgment debtor. *See* Wis.Stat. § 806.21. Disposition of money paid to federal court is then determined by federal law. *See* 31 U.S.C. § 725v; 28 U.S.C. §§ 2041, 2042.[18] It is this procedure which the district court should have adhered to regarding the satisfaction of the judgment. This procedure is fair to all the parties involved and protects all of their interests.

▆▆ In any event, we fail to see how the district court would have had the authority to vacate its order and then dismiss the action on the merits solely because the prevailing party failed to satisfy the judgment. Rule 60(b) of the Federal Rules of Civil Procedure governs relief from a judgment or order.[19] Nowhere among the possible contingencies presented in Rule 60(b) is found the "failure to execute a satisfaction of judgment." It is our opinion that the district court had no authority to structure his order in such a manner.

---

**18.** Typically, all moneys paid into any court of the United States are deposited with the Treasurer of the United States or a designated depositary, in the name and to the credit of such court. After five years, provided the case is adjudicated or is not in dispute, the court causes such moneys to be deposited in the Treasury in the name and to the credit of the United States. *See* 28 U.S.C. §§ 2041, 2042.

**19.** Rule 60(b) provides in part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order,

It is thus unnecessary to reach the attorney's fees issue in light of our conclusion regarding the propriety of the 45-day satisfaction of judgment requirement. No matter what course of conduct Wolf-Lillie will choose to pursue, she will always be considered to be the "prevailing party" in this case. *Cf. Crosby v. Bowling*, 683 F.2d 1068, 1070 (7th Cir.1982). Her counsel is thus entitled to fees.

## VI.

Accordingly, for the reasons discussed in this opinion, the judgment of the district court is vacated and remanded to the district court for proceedings consistent with this opinion.

or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judg-ment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

\*    \*    \*    \*    \*    \*

Rule 60(b), Fed.R.Civ.P.