980 F.2d 733
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Brian NELSON, Plaintiff/Appellant,
v.
J. Ronald HAWS, Defendant/Appellee.
 No. 91-2867.
 United States Court of Appeals, Seventh Circuit.
 Submitted Nov. 13, 1992.*
Decided Dec. 3, 1992.
 
 Before COFFEY and EASTERBROOK, Circuit Judges, and WOOD, JR., Senior Circuit Judge.
 
 ORDER
 
 1
 Plaintiff Brian Nelson, an inmate at Centralia Correctional Center ("Centralia"), brought an action under the Civil Rights Act, 42 U.S.C. § 1983, alleging that J. Ronald Haws, the warden at Centralia violated his First, Eighth and Fourteenth Amendment rights. The district court held that Haws was not responsible for Nelson's alleged Constitutional deprivations. We affirm on the issue of damages and remand to the district court for findings regarding the question of injunctive relief.
 
 BACKGROUND
 
 2
 Nelson was in a program for temporary disciplinary transfer ("TDT") inmates. TDT inmates, also known as "circuit riders," are maximum security inmates who are frequently moved from one facility to another. As a TDT inmate, Nelson was in segregational status.
 
 
 3
 Nelson was incarcerated at Centralia six times as a "circuit rider" between January of 1988 and August of 1990. In March 1989 Nelson filed this suit asserting numerous claims against Haws in his individual capacity. The court appointed counsel.
 
 
 4
 A bench trial was held. At the close of Nelson's case, the court granted Haws a directed verdict on all claims except the denial of exercise and the deprivation of legal materials and law clerks. The trial continued on those two issues.
 
 
 5
 The district court entered judgment for Haws. The court found that Nelson had not been unconstitutionally deprived of his right to exercise, but that the system for allowing segregated inmates at Centralia to gain access to the law library was constitutionally inadequate. However, the district court ultimately found that Haws was not personally responsible for the alleged denial. Nelson appeals pro se.
 
 ANALYSIS
 
 6
 Nelson argues that Haws should be held personally liable under § 1983 for the difficulties Nelson experienced in acquiring legal materials. As a government official, Haws could be held personally liable under § 1983 if he acted under the color of state law to deprive Nelson of a federal right. Kentucky v. Graham, 473 U.S. 159 (1985). Nelson had to show that Haws "caused or participated in an alleged constitutional deprivation." Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir.1983). There must be "a causal connection, or affirmative link, between the misconduct complained of and the official sued." Id.
 
 
 7
 Nelson complains he was deprived of his Constitutional right of access to the courts. Prison authorities are required to provide "adequate law libraries or adequate assistance from persons trained in the law." DeMallory v. Cullen, 855 F.2d 442 (7th Cir.1988) (quoting, Bounds v. Smith, 430 U.S. 817 (1977)). We do not have to decide today whether the conditions at Centralia met the Constitutional standards as described in Bounds. We only need determine whether Haws was personally liable for the alleged deficiencies.
 
 
 8
 Nelson argues that Haws signed and implemented an Institutional Directive which, in practice, deprived Nelson of meaningful access to legal materials. The directive prohibited segregated inmates from entering the library and established procedures for assisting inmates with their legal research. Nelson argues that the enforcement of this procedure effectively prevented segregation inmates from acquiring the materials necessary for researching legal claims. It follows, he argues, that because Haws signed and implemented the directive, Haws personally prevented Nelson from gaining access to the law and ultimately to the courts. We disagree.
 
 
 9
 The district court made several factual findings as to who formulated procedures and controlled their implementation. These findings may not be set aside by the reviewing court unless clearly erroneous. Fed.R.Civ.P. 52(a). The district court found that the wardens at various institutions had no control over the TDT program; the program originated in the office of the Director of the Illinois Department of Corrections and all decisions were made in Springfield. The wardens at various institutions merely implemented directives. The record indicates that Haws was obligated to keep Nelson in segregated status and could not permit him to walk into the library.
 
 
 10
 The district court also found that Haws could not be held liable for the inadequacies of using inmate law clerks to provide legal materials. The court determined that the library system was operated out of Springfield and managed by the Superintendent of Department of Corrections School District # 428, independently of the warden.
 
 
 11
 As revealed at trial, the alleged inadequacies with the library procedures for segregated inmates were the direct result of inadequate staffing, training and implementing of existing directives. Although inmate law clerks could discuss legal matters with prisoners, the clerks had no formal legal training and their time was often limited. The district court found that the Superintendent, not Haws, was responsible for making hiring decisions.
 
 
 12
 In order to maintain a successful claim against Haws as a supervisory official, Nelson had to show that Haws "knowingly, willfully, or at least recklessly caused the alleged deprivation by his action or failure to act." Rascon v. Hardiman, 803 F.2d 269, 274 (7th Cir.1986). Because Haws did not have the power to act, he could not be held liable for a failure to act.
 
 
 13
 As the district court found, Nelson did not show damages as a proximate cause of any act or failure to act by Haws. Although Nelson experienced difficulties in conducting research for his post-conviction actions, at the time of trial Nelson still had one year left on the statute of limitations. Furthermore, Nelson had five actions proceeding in federal courts despite the obstacles he had encountered.
 
 
 14
 Although we agree that Haws is not liable for damages, there is still the issue of injunctive relief. At the close of the hearing, Nelson's lawyer requested that Nelson be provided with adequate facilities or court-appointed counsel for his pending claims. The district court refused to consider injunctive relief because Nelson requested only compensatory and punitive damages in his pleadings. However, the district court was required to make findings as to whether Nelson was entitled to injunctive relief. See Fed.R.Civ.P. 54(c).
 
 CONCLUSION
 
 15
 The evidence at trial did not reveal that Haws could be held personally liable for damages for the alleged violations of Nelson's constitutional rights. For the reasons stated above, we AFFIRM the district court's judgment on damages, and REMAND for findings on whether Nelson was entitled to injunctive relief.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs