25 F.3d 1053
NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Fabio DIAZ, Petitioner-Appellant,
v.
D.R. MCBRIDE & Indiana Attorney General, Respondents-Appellees.
 No. 92-2596.
 United States Court of Appeals, Seventh Circuit.
 Argued April 27, 1994.*
Decided May 16, 1994.
 
 Before POSNER, Chief Judge, and BAUER and COFFEY, Circuit Judges.
 
 ORDER
 
 1
 Fabio Diaz, an inmate at the Westville Correction Center in Indiana, was making his usual trip into the segregation unit as required by his job assignment as a lay advocate. During the standard entry-search, officers confiscated several envelopes of tobacco, which they believed Diaz was trying to smuggle to offenders in the segregation unit. The tobacco was not found on Diaz's person but in a file folder that Diaz had turned over to the searching officer (Jirtle) prior to the entry-search. Tobacco is not permitted in the segregation unit. As a general population inmate, Diaz is allowed to carry tobacco for his personal use. Nonetheless, Officer Jirtle filed a conduct report that day, stating that Diaz was attempting to commit a class B offense: trafficking. Three days later, Diaz was relieved of his position as a lay advocate pending review by the Conduct Adjustment Board (CAB). The three-member CAB panel found Diaz guilty of violating Department of Corrections Adult Disciplinary Policy 465 (Class D: "Violating any facility/institution rule, regulation or standing order if said rule, regulation of standing order has been communicated to the offender.") A single sanction was imposed--Diaz was removed from his work assignment as a lay advocate.
 
 
 2
 Diaz admits to having had three separate envelopes of tobacco inside the file folder that he was carrying. However, Diaz maintains that the tobacco was for his personal use and that he had turned it over to Officer Jirtle prior to the entry-search.
 
 
 3
 After exhausting all administrative remedies, Diaz filed a petition pursuant to 28 U.S.C. Sec. 2254 arguing that (1) the sanction, initially imposed on January 6, 1992 by a single prison official without a hearing, and continued following the CAB decision in the name of the unit-team, violated Indiana law and federal due process, (2) the sanction was unreasonable and arbitrary for a class D violation, (3) the sanction was illegally imposed for the sole purpose of hampering Diaz in his legal activities and (4) imposition of the sanction was motivated by racial prejudice and retaliation.[1] The district court dismissed the petition. Because Diaz challenges the fact of discipline and the sanctions imposed, and not the confinement itself, we construe Diaz's petition as being brought pursuant to 42 U.S.C. Sec. 1983, see Graham v. Broglin, 922 F.2d 379, 381 (7th Cir.1991), Viens v. Daniels, 871 F.2d 1328, 1333-34 (7th Cir.1989), and review de novo. Lawshe v. Simpson, 16 F.3d 1475 (7th Cir.1994); Sherman v. Four County Counseling Center, 987 F.2d 397, 400 (7th Cir.1993).
 
 
 4
 The fact that the sanction was initially imposed on January 6, 1992 by a single prison official without a hearing and prior to the CAB decision does not violate federal due process. Prison work assignments are solely at the discretion of the prison and its officers. See Wallace v. Robinson, 940 F.2d 243, 245 (7th Cir.1991) (en banc), cert. denied, 112 S.Ct. 1563 (1992); Ind.Cod Sec. 11-10-6-3 (1993). Diaz had no constitutional right to any particular job assignment and his job assignment at any given time was subject to change for any reason at the discretion of the prison, regardless of any pending disciplinary proceedings. Id. at 248; see also Olim v. Wakinekona, 461 U.S. 238, 250 (1983). Accordingly, we need not address Diaz's assertion that the sanction was unreasonable for a class D violation, although we do note that Indiana's Adult Disciplinary Policy specifically provides for a change in work assignment as a sanction for a class D violation. See Ind. Dept. of Corrections, Adult Disciplinary Policy Procedures, Sec. 23-C(2)(e), Sec. 30 (1990). There is no evidence in the record supporting Diaz's assertion that the sanction was imposed for the purpose of hampering his legal activities. Diaz does not allege that he is, or has been, denied access to the law library upon the same conditions as any other inmate.
 
 
 5
 Diaz asserts that the sanction imposed was the result of racial prejudice and retaliatory action on the part of Officer Jirtle. However, Diaz fails to allege any sort of affirmative link between the named defendants and Officer Jirtle. A Sec. 1983 claim cannot be maintained under a theory of supervisory liability. Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691-694 (1978); Wolf-Lillie v. Sonquist, 699 F.2d 864, 869 (7th Cir.1983).
 
 
 6
 In support of his allegation of racial bias, Diaz offers affidavits of two other lay advocates both of whom are white. Both declare that on numerous occasions they possessed tobacco, which was discovered during the entry-shakedown and held by the searching officer until they left the segregation unit. Neither declarant had ever received disciplinary charges or a conduct report stemming from their possession of the tobacco. (R. at 14) Additionally, Diaz names three other white inmates, who, according to Diaz, possessed tobacco in the segregation unit but were not punished. Id.
 
 
 7
 Prison officials may not, of course, distribute benefits or burdens on the basis of impermissible factors such as race. See Madyun v. Thompson, 657 F.2d 868, 874 (7th Cir.1981). However, the fact that other white inmates were not disciplined when they possessed tobacco under similar circumstances as Diaz, does not support a finding that Diaz was disciplined because he is black-hispanic. To prove a prima facie case of racial discrimination, Diaz would have to establish a significant statistical disparity between blacks and whites with respect to the prison's departures from its disciplinary norms. See Bush v. Commonwealth Edison Co., 990 F.2d 928, 932 (7th Cir.1993), cert. denied, 1994 WL 158373 (U.S. May 2, 1994) (No. 93-5574). The affidavits of the two white lay advocates, without more, do not demonstrate a pattern of unequal enforcement of disciplinary rules.
 
 
 8
 For the foregoing reasons, the judgment of the district court is AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal is submitted on the briefs and record
 
 
 [1]
 Diaz also asserts that he was not charged within the ten-day time period as required under Indiana law. See Ind.Code Sec. 11-11-5-5(b) (1993). This issue was not raised in the original petition before the trial court and accordingly cannot be reviewed. Resolution Trust Corp. v. Juergens, 965 F.2d 149, 153 (7th Cir.1992); In re Kroner, 953 F.2d 317, 319 (7th Cir.1992)