In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1762

HANS C. KUHN,

*Plaintiff-Appellant,*

*v.*

THADDEUS GOODLOW,
Building Commissioner,
City of Markham,
in his individual capacity,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 08 CV 1661—**James B. Zagel**, *Judge.*

ARGUED JANUARY 11, 2012—DECIDED MAY 2, 2012

Before KANNE, WILLIAMS, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.*    Hans Kuhn and a prospective tenant signed a residential lease at a home for which Kuhn had not yet obtained a valid certificate of occupancy. As the tenant began moving his belongings into the house, building inspector Thaddeus Goodlow reminded

Kuhn that all rental property must have a certificate of occupancy before a tenant can live in the house. Visibly upset, Kuhn allegedly berated Goodlow in the presence of Markham police officer, Kenneth Muldrow, who then arrested Kuhn for disorderly conduct. Following his conviction, Kuhn brought this suit claiming he was unlawfully arrested without probable cause. The district court dismissed Officer Muldrow as a party early in the proceedings and later granted summary judgment to Goodlow. We affirm.

## I. BACKGROUND

Hans Kuhn owned residential rental property on Cyprus Avenue in Markham, Illinois. During the summer of 2007, Kuhn renovated portions of the property, including the destruction of a dilapidated back porch that stood approximately five feet from the ground. To temporarily prevent anyone from using the door that opened onto the now-destroyed porch, Kuhn bolted it shut. As he finished the renovations, but before he replaced the deck, Kuhn applied for a certificate of occupancy from the city.[1] On the morning of October 22, 2007, Thaddeus Goodlow, Markham's Building Commissioner and a city building inspector, met Kuhn to assess the home's compliance with the city's building code. In a written inspection report, Goodlow reported

---

[1] In Markham, a landlord must obtain a certificate of occupancy before a tenant can take possession of the rental dwelling. Markham, IL Code § 151.23(A).

that the "Fences/Porches/Decks" portion of the house did not meet the city's standards. In the notes section of the report, Goodlow wrote that the house was "ok for occupancy except it has no back door or deck." Based on the missing deck, Goodlow rejected Kuhn's application for a certificate of occupancy permit.[2] But, evidently believing that obtaining a certificate was a sure thing, Kuhn had previously agreed to lease the house to a tenant who was scheduled to move in later that same day.

That afternoon, Goodlow, with Officer Kenneth Muldrow in tow, returned to the Cyprus Avenue house. Goodlow claims that he and Officer Muldrow just happened to drive by Kuhn's house after investigating a nearby water-theft complaint. Although Kuhn calls Goodlow's explanation pretextual, the motivation for their visit is immaterial. The important fact is that once Goodlow and Officer Muldrow were at the Cyprus Avenue house, the two men observed Kuhn's tenant moving into the house despite Goodlow's earlier refusal to issue Kuhn a certificate of occupancy. On arrival, Goodlow approached the tenant to explain the situation and the

---

[2] Despite statements to the contrary in the inspection report, Kuhn claims that Goodlow orally approved his application for a certificate of occupancy. Kuhn also claims that Goodlow directed him to the Buildings Department office to pick up the certificate. We need not resolve this factual dispute because once Kuhn went to the Buildings Department, he was unequivocally denied a permit. At no time did Kuhn ever possess a valid certificate of occupancy for the Cyprus Avenue property.

tenant quickly called Kuhn. Kuhn then drove to the house to confront Goodlow.

Kuhn and Goodlow vehemently disagree about what happened next. Goodlow claims that Kuhn was furious upon arrival. Kuhn is reported to have said, "call my lawyer, call my wife," and "I can buy and sell this city, I own five pharmacies." (Goodlow Dep. at 46.) According to Goodlow, Officer Muldrow asked Kuhn to calm down. (*Id.*) Kuhn refused, and Officer Muldrow then placed Kuhn under arrest for disorderly conduct. (*Id.* at 47.) At the station house, Kuhn was given a citation indicating that he had "no occupancy permit." As expected, Kuhn disputes Goodlow's version of events. Kuhn acknowledges his arrest, but claims that he was "calm and respectful[]" while interacting with Officer Muldrow. (Kuhn Aff. at 5.) Kuhn also offered two witness affidavits to support this contention. Because Kuhn was acting calmly, he claims that he could not have been arrested for disorderly conduct, and thus, he could have only been arrested for failing to obtain the required certificate of occupancy.

On November 10, 2007, Kuhn appeared at some type of judicial proceeding—the parties suggest it was before a Markham municipal court—where Kuhn was convicted and agreed to pay a fine. But inexplicably, neither party can locate a record of the actual judgment rendered against Kuhn. Nevertheless, Kuhn now concedes that he was convicted of disorderly conduct, and the record certainly supports that theory. For example,

Goodlow testified at Kuhn's hearing that Kuhn was out of control and that "[h]e went ballistic" (Goodlow Dep. at 61), which of course suggests that he was charged and convicted of disorderly conduct. We also have Officer Muldrow's police report, which was completed on the same day as Kuhn's arrest. In the report, Officer Muldrow notes that Kuhn was arrested for disorderly conduct. He goes on to write that Kuhn "became irate and began yelling and refused to obey any of [Officer Muldrow's] verbal commands" after being told that he was in violation of a city ordinance. The police report concludes by noting that Kuhn was also given "a citation under ordinance number 151.23"—the Markham city ordinance requiring landlords to obtain a certificate of occupancy for all rental property.

In March 2008, Kuhn filed a three-count complaint against Goodlow and Officer Muldrow. Under 42 U.S.C. § 1983, Kuhn first claims that Officer Muldrow, acting at the direction of Goodlow, violated his Fourth Amendment rights by arresting him without probable cause. Kuhn also asserts two state-law claims against both men, claiming that he was falsely imprisoned and falsely arrested, again on the ground that there was no probable cause for his arrest. In August 2008, the district court dismissed the entire complaint against both defendants without prejudice. Kuhn filed an amended complaint in September 2008, essentially making the same three allegations against both Goodlow and Officer Muldrow. In November 2008, the district court dismissed the amended complaint in its entirety as to Officer Muldrow, but denied most of Goodlow's

motion to dismiss. Following discovery, the district court granted Goodlow's motion for summary judgment on all remaining counts, reasoning that *Heck v. Humphrey*, 512 U.S. 477 (1994), bars the § 1983 claim and collateral estoppel bars the two state-law claims. Kuhn filed this timely appeal.[3]

## II. ANALYSIS

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review grants of summary judgment *de novo*, viewing the record in the light most favorable to Kuhn and drawing all reasonable inferences in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Draper v. Martin*, 664 F.3d 1110, 1113 (7th Cir. 2011). But, "before a non-movant can benefit from a favorable view of the evidence, it must show that there is some genuine evidentiary dispute." *SMS Demag Aktiengesellschaft v. Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). We will only find that a factual dispute is genuine if a reasonable jury could find for either party. *Stokes v. Bd. of Educ. of Chicago*, 599 F.3d 617, 619 (7th Cir. 2010).

Before proceeding, we want to make clear that unlike the district court below, we offer no opinion on *Heck*'s

---

[3] Kuhn does not contest summary judgment on his two state-law allegations. Accordingly, we only consider Kuhn's appeal as to Count I of his amended complaint—the § 1983 allegation.

applicability to this case. In *Heck*, the Court held that state-prisoner § 1983 actions must be dismissed if a "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence . . . unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487; *see also Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003) ("[I]f he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit."). Here, the district court found that *Heck* bars Kuhn from arguing that he behaved calmly towards Officer Muldrow, because such an argument necessarily implies the invalidity of his disorderly conduct conviction. The district court's conclusion is both well-reasoned and persuasive, but the record in this case is unclear as to the type of judicial proceeding in which Kuhn took part—neither party could even produce a copy of the judgment rendered against Kuhn, although they both suggest it was before a municipal court. We have previously reserved judgment on whether *Heck* applies to "an administrative proceeding or a finding of a violation of a city ordinance," *Justice v. Town of Cicero*, 577 F.3d 768, 773 (7th Cir. 2009), and we continue to reserve judgment until the issue can be more thoroughly considered from a carefully maintained record. Despite our departure from the district court's reasoning, "we may affirm the judgment on any basis that is supported by the record before us." *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 681 (7th Cir. 2007) (*citing Winters v. Fru-Con Inc.*, 498 F.3d 734, 743 (7th Cir. 2007)); *see also Ruth v. Triumph P'ships*, 577 F.3d 790, 796 (7th Cir. 2009).

With *Heck* out of the way, we begin by identifying the one guiding principle that controls this dispute. That is, § 1983 liability is premised on the wrongdoer's personal responsibility. "An *individual* cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983); *see also Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008); *Townsend v. Fuchs*, 522 F.3d 765, 775 (7th Cir. 2008). Here, Kuhn's personal-liability theory is grounded in his steadfast belief that he was only arrested for failing to obtain a certificate of occupancy. Kuhn contends that because this was the sole basis for his arrest, Goodlow must have personally directed Officer Muldrow to make the arrest. Otherwise, Officer Muldrow would have had no personal knowledge of Kuhn's housing-code violation. Goodlow's connection to the arrest, according to Kuhn, is enough to impose personal liability under § 1983. We disagree.

At the outset, Kuhn ignores significant portions of the record suggesting he was arrested for disorderly conduct. For example, Kuhn solely and repeatedly points to his citation—or "arrest citation" as he erroneously refers to it—as evidence that he was exclusively cited and arrested for failing to obtain a certificate of occupancy. To Kuhn, this is conclusive proof that the disorderly conduct charge was added by Goodlow and Officer Muldrow only *after* he was arrested. Kuhn is of course correct in that the citation describes the prohibited act as "no occupancy permit," but he fails to mention that Officer Muldrow issued the certificate-of-

occupancy citation *after* Kuhn's arrest and trip to the station house. (Muldrow Dep. at 30.) The timing of the citation suggests that Kuhn was arrested for something more than simply failing to obtain the certificate. Moreover, this citation is *not* a record of arrest, and thus, Kuhn cannot credibly claim that the citation completely documents the crimes for which he was arrested. Kuhn also ignores Officer Muldrow's police report, completed on the day of the arrest, which plainly states that Kuhn was arrested for disorderly conduct. Goodlow's deposition and testimony at Kuhn's judicial hearing corroborate Officer Muldrow's report. Additionally, the narrative section of the report indicates that Kuhn was also issued a citation for failing to obtain a certificate of occupancy. Thus, the only reasonable understanding of Kuhn's arrest is that he was initially arrested for disorderly conduct and then cited for failing to obtain a certificate of occupancy.

Kuhn attempts to dispute Goodlow's evidence by claiming that the police report is a post-arrest fabrication. But, there is no evidence in the record to support this inference, other than Kuhn's one recycled argument pointing to the citation as evidence that he was only arrested for failing to obtain a certificate of occupancy. To create a genuine issue of material fact needed to survive summary judgment, Kuhn must dispute Goodlow's evidence such that a reasonable jury could find that he was not arrested for disorderly conduct. *See Stokes*, 599 F.3d at 622 ("We may reverse the district court's grant of summary judgment only

if we find that the [non-movant] offered sufficient evidence to create a genuine dispute of material fact . . . ."). Even when we draw all justifiable inferences in Kuhn's favor, his one argument is simply not enough. Therefore, we conclude that Goodlow has satisfied his summary-judgment burden in showing that Kuhn was arrested for disorderly conduct.

This brings us back to *Wolf-Lillie* and personal liability under § 1983. Here, of course, Kuhn argues that Goodlow must have been directly and personally involved in Kuhn's arrest if that arrest occurred solely because he failed to obtain a certificate of occupancy. But as the preceding review of the record indicates, Kuhn was arrested (and then convicted) for disorderly conduct—a charge that Officer Muldrow personally observed. It was Officer Muldrow who then made the arrest; something that Goodlow, as a city building in-spector, is not authorized to do. There is simply no evi-dence in the record to suggest a causal connection or affirmative link between Goodlow and the alleged false arrest for disorderly conduct. *See Wolf-Lillie*, 699 F.2d at 869 ("Without a showing of direct responsi-bility for the improper action, liability will not lie against a supervisory official. A causal connection, or an affirmative link, between the misconduct com-plained of and the official sued is necessary."). Because Goodlow had no personal responsibility for Kuhn's disorderly conduct arrest, he cannot be held liable under § 1983.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Goodlow.