**Juan MORALES, Plaintiff-Appellee and Cross-Appellant,**

v.

**Mateo CADENA, Defendant-Appellant and Cross-Appellee,**

and

**Edwin Kehl, Defendant-Cross-Appellee.**

**Nos. 86–1457, 86–1504, 86–1631 and 86–1670.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 4, 1986.

Decided June 23, 1987.

Rehearing and Rehearing En Banc Denied Aug. 19, 1987.

Maureen McGlynn, Asst. Atty. Gen., Dept. of Justice, Madison, Wis., for defendant-appellant and cross-appellee.

Robert J. Gingras, Fox, Fox, Schaefer & Gingras, S.C., Madison, Wis., for plaintiff-appellee and cross-appellant.

Before BAUER, Chief Judge, FLAUM, Circuit Judge and REYNOLDS,* Senior District Judge.

BAUER, Chief Judge.

Plaintiff Juan Morales brought suit under 42 U.S.C. § 1983 seeking damages from Mateo Cadena and Cadena's supervisor, Edwin Kehl. Morales argued that Cadena refused to hire him for three separate migrant labor specialist positions because he supported the "DILHR 7", a group of DILHR employees who were terminated or not rehired because of their support for the aggressive enforcement of the migrant labor laws. Morales argued that Kehl failed to monitor Cadena's potentially improper hiring practices. The jury found that defendant Cadena's decision not to hire Morales for the migrant labor specialist positions was substantially motivated by a desire to retaliate against Morales for his involvement with the DILHR 7. Additionally, the jury found that Kehl's inaction allowed Cadena to pass over Morales for two of the three specialist positions. The jury awarded Morales $82,081 in compensatory damages and $70,000 in punitive damages against Cadena. It awarded Morales $40,000 in punitive damages against Kehl. The district court denied Cadena's post-trial motions for judgment notwithstanding the verdict and for a new trial, but granted Kehl's motion for judgment notwithstanding the verdict and dismissed plaintiff's complaint against Kehl

on the ground that he did not personally participate in plaintiff's constitutional deprivations. We affirm.

## I.

### "DILHR"

In 1977, the State of Wisconsin enacted a new migrant labor law. Under the 1977 statute, the Bureau of Migrant and Rural Services ("Migrant Bureau") within the Job Service Division of the Wisconsin Department of Industry, Labor and Human Relations ("DILHR") assumed new responsibilities for the enforcement of the laws regulating the employment of migrants. Included among the Migrant Bureau's responsibilities was the enforcement of the state migrant labor laws regulating migrant labor contractors, work agreements between migrants and their employers and migrant housing. The Migrant Bureau also undertook administration by the state of federal Occupational Safety and Health ("OSHA") regulations for temporary labor camps.

In 1978, controversy arose concerning DILHR management's intention to enforce aggressively the new migrant labor laws. Many Migrant Bureau employees, members of the Hispanic community, and representatives of Hispanic community organizations were dissatisfied because it was commonly felt that DILHR management was not committed to the aggressive enforcement of the new laws.

On September 7, 1978, eight Bureau staff members transmitted a memorandum to DILHR management expressing their support for the appointment of Victor Arellano to the Migrant Services Supervisor position. Instead, DILHR management appointed defendant Cadena. In November of 1978, DILHR management began an internal investigation of former and current Migrant Bureau employees. As a result of the investigation, those employees who had supported Arellano over Cadena were terminated or not rehired in 1979. These persons became known as the

* The Honorable John W. Reynolds, Senior District Judge is sitting by designation.

"DILHR 7". The adverse employment actions taken against the DILHR 7 in 1979 were viewed as retaliatory for their advocacy for the aggressive enforcement of the migrant labor laws. The DILHR 7 protested and obtained the support of much of the Hispanic community, including the support of La Raza Unida, a Hispanic community organization that worked closely with migrants. The DILHR 7 controversy which ensued involved public demonstrations, extensive newspaper coverage and legislative investigative hearings. Bad feelings existed between those that supported the DILHR management and those that supported the DILHR 7.

### Defendant Mateo Cadena

Cadena supported DILHR management. He assisted in the investigation of the DILHR 7 and defended actions taken against the DILHR 7 at the legislative hearings. As one of the leaders of the DILHR 7, Morales spoke at rallies, participated in demonstrations, attended legislative hearings, and led Hispanic organizations that supported the DILHR 7. In addition, Morales' wife Irma was one of the leaders of the DILHR 7.

The DILHR 7 brought suit alleging a violation of their first amendment rights. At the conclusion of that litigation in April, 1981, the district court entered a Consent Decree which provided that the DILHR 7 be reinstated to their prior positions of employment and that neither the DILHR 7 nor their supporters be retaliated against.

In 1984, plaintiff applied for and then took a civil service examination to be considered for three "migrant inspector" vacancies in the Migrant Bureau. Persons hired for the migrant inspector positions were required to speak, read, and write in both Spanish and English. The primary duties of the migrant inspector included the inspection of migrant camps, the monitoring of migrant worker agreements, and the supervision of migrant labor contractors and OSHA inspectors. After taking the migrant inspector written examination, plaintiff was one of fourteen candidates certified on May 1, 1984, for a migrant inspector position in Green Bay; one of thirteen candidates certified on July 6, 1984, for a similar vacancy in Beaver Dam; and one of fifteen candidates certified on August 14, 1984, for a third inspector position in Waukesha.

Defendant Cadena was in charge of the interviewing process for each position and was responsible for filling the vacancies for each position. Cadena notified Morales by letter in May, July, and September, 1984, that he was not selected for any of the inspector positions.

### Edwin Kehl

Defendant Kehl became Deputy Administrator of the Job Service Division in August, 1978, more than a year after the Migrant Bureau controversy began. Prior to August, 1979, Kehl was Administrator of the Manpower Services Division of DILHR and had no responsibility for supervision of the Migrant Bureau. He served as either Deputy Administrator or Assistant Administrator of the Job Service Division from August 1979 until January, 1983. In January 1983, he was appointed Administrator and served in that capacity until November, 1984.

Morales brought suit against Cadena alleging that he had deprived Morales of his first amendment rights by failing to hire him in retaliation for his support of the DILHR 7 and against Kehl alleging that Kehl, as Job Service Administrator, had deprived plaintiff of his first amendment rights by intentionally or negligently failing to supervise Cadena. The jury awarded damages against Cadena and Kehl. The district court denied Cadena's motions for judgment n.o.v. and for a new trial, but granted Kehl's judgment n.o.v. motion and dismissed the complaint against Kehl. This appeal followed.

### II.

■ Cadena argues that the district court erred when it denied his post-trial motions for judgment n.o.v. pursuant to Federal Rule of Civil Procedure 50. A district court's grant or denial of judgment n.o.v. is subject to *de novo* review. *Kun-*

zelman v. Thompson, 799 F.2d 1172, 1179 (7th Cir.1986). We apply the same standard as the district court. *Syvock v. Milwaukee Boiler Manufacturing Co.,* 665 F.2d 149, 154–55 (7th Cir.1981). The standard is whether there is substantial evidence to support the verdict. Specifically, we inquire whether the evidence presented, combined with all the reasonable inferences that may be drawn from it, is sufficient to support the verdict when viewed in the light most favorable to the party winning the verdict. *La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1410 (1984). Accordingly, the facts which follow are presented in a light most favorable to Morales. Ultimately, we must determine whether there was substantial evidence to support the jury verdict. *La Montagne,* 750 F.2d at 1410.

Cadena argues that he is entitled to judgment n.o.v. on liability under *Mt. Healthy City School District v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) because the only reasonable conclusion from the evidence is that Morales would not have been hired for the Green Bay or Beaver Dam position regardless of his past exercise of his first amendment rights. He argues that the question for the jury to decide was whether Cadena had selected the most qualified candidate. Morales argues that the district court correctly denied Cadena's judgment n.o.v. motion because the jury reasonably concluded that there was sufficient evidence to indicate that Morales would have been hired, but for his past protected activities.

■ The burden is on Cadena to prove that he would have reached the same hiring decisions regarding Morales even in the absence of protected conduct. *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576. The evidence shows that Cadena failed to meet this burden. The following evidence, plus testimony by Cadena himself, suggests that the jury could have reasonably concluded that Morales was more qualified than Ripple and Ringstad, two of the successful candidates for the migrant specialist positions. First, Morales scored 93.72 on the written examination and was ranked

number one out of 62 applicants because of his score. The written exam was administered to determine knowledge and ability to work as a migrant inspector. Second, the only special requirement listed in the job announcement for migrant inspector positions was the candidate's ability to speak and write Spanish. Cadena himself ranked Morales as more qualified to speak Spanish than both Ripple and Ringstad. An expert witness for Morales, Francisco Lasarte, testified that Morales was better qualified to speak, read, and write Spanish than Ripple and Ringstad. Lasarte testified that Ripple was not fluent in Spanish and that Ringstad spoke Spanish with a slight accent. Since Morales spoke Spanish better than Ripple and Ringstad and since the ability to speak Spanish was the only special requirement for the job, there was sufficient evidence on this one factor alone for the jury to conclude that Morales would have been selected but for his protected activities. In addition, Morales' education and prior experience made him the more obvious choice for a migrant inspector position than Ripple or Ringstad. Morales had a master's degree in rural agricultural planning. Neither Ripple nor Ringstad had a master's degree. Morales had more experience directly related to migrants as a migrant worker and as a member of La Raza Unida than either of the successful candidates. All of this evidence, when viewed in the light most favorable to Morales, was sufficient to support the jury's verdict that Morales would have been hired over Ripple and Ringstad for the Green Bay and Beaver Dam positions but for his protected activities.

### III.

■ Cadena argues that he is entitled to judgment n.o.v. or to a remittitur on the awards of compensatory damages for emotional distress or future earnings. We disagree. Cadena failed to move for a directed verdict under Rule 50 of the Federal Rules of Civil Procedure as to damages for emotional distress or future earnings. A motion for judgment n.o.v. must be predicated by an appropriate motion for directed verdict. *Exxon Corp. v. Exxene Corp.,* 696

F.2d 544, 551 (7th Cir.1982) (citing *Continental Airlines, Inc. v. Wagner-Morehouse, Inc.*, 401 F.2d 23, 25–26 (7th Cir. 1968)). A motion for a directed verdict must state the specific grounds therefore. *McKinnon v. City of Berwyn*, 750 F.2d 1383, 1388 (7th Cir.1984). Because Cadena did not make an appropriate motion for directed verdict on the issues of emotional distress and future earnings, he is precluded from moving for judgment n.o.v. Federal Rule of Civil Procedure 50(b); *Exxon* at 551.

■ We also reject Cadena's argument that he is entitled to a remittitur as to compensatory damages for either emotional distress or loss of future earning capacity. In determining whether an award is excessive, substantial deference should be given to the decision of the jury and the jury's award should not be disturbed unless it is "monstrously excessive" or "so large as to shock the conscience of the court." *Marybeth G. v. City of Chicago*, 723 F.2d 1263, 1275 (7th Cir.1983). The jury considered the emotional turmoil and depression which Morales suffered. It also considered the career disruption Morales suffered as a result of Cadena's rejection. For these reasons, we defer to the decision of the jury, and affirm the district court's refusal to remit the damage award.

### IV.

■ Cadena argues that he is entitled to a new trial because the judge admitted evidence that a sexual harassment action was pending against him. Cadena argues that this testimony was prejudicial and inflammatory.

On the second day of trial, the plaintiff called John Bauer as a witness. When examining Bauer, a supervisor of Cadena, defendant's counsel referred Bauer specifically to the issue of Cadena's adequacy as a supervisor in the area of sexual harassment. Defendant's counsel immediately solicited testimony from Bauer to the effect that Cadena did not need additional training concerning his affirmative action or equal opportunity duties as a supervisor. As such, defendant's counsel opened the door to the impeachment of Bauer's opinion of Cadena based upon the sexual harassment claim against Cadena. Once the defendant has opened the door by offering evidence as to a defendant's good character, opposing counsel may rebut that evidence and has wide latitude on cross-examination. *Michelson v. United States*, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948). Even though this evidence was admissible for impeachment purposes, the court nevertheless instructed the jury to disregard the evidence about the sexual harassment complaint. The motion for new trial was appropriately denied on this basis.

### V.

Finally, we address the district court's judgment granting defendant Kehl's motion for judgment n.o.v. and dismissing Morales' claim against him. Morales argues that Kehl either intentionally or recklessly disregarded his constitutional rights under the first amendment. He argues that Kehl knew that Morales had filed a discrimination charge against Cadena with the Personnel Commission of the State of Wisconsin; and that Kehl was aware of the DILHR 7 controversy and that the controversy had been a highly political and volatile issue resulting in hard feelings between the two factions. On this basis, Morales argues that Kehl acted with reckless disregard of his rights.

■ We apply the same standard to the district court's grant of judgment n.o.v. to Kehl as we did to Cadena. *La Montagne* at 750 F.2d 1410. We again must determine whether there was substantial evidence to support the jury verdict. We agree with the district court that none of the evidence presented indicates that Kehl personally participated in plaintiff's alleged constitutional deprivation. Kehl was not personally responsible for supervising Cadena's selection decisions, nor did plaintiff present any evidence to show that Kehl had ever heard of Morales until he received a copy of his state fair employment complaint. Accordingly, we hold that the evidence is insufficient to establish that Kehl

violated Morales' first amendment rights, either intentionally or negligently. *See Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576; *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) (To make out a first amendment claim against him, plaintiff must establish that he acted or failed to act with intentional or reckless disregard for plaintiff's rights or that the conduct causing the deprivation occurred at his direction or with his knowledge and consent). Moreover, section 1983 requires that the defendant be personally responsible for the deprivation of plaintiff's rights. *Wolf-Lillie v. Sanquist,* 699 F.2d 864, 869 (7th Cir.1983). Plaintiffs failed to show that Kehl had such direct responsibility.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.