Gary A. BORZYCH, Plaintiff,

v.

Matthew J. FRANK, Steve Casperson, Ana M. Boatwright, Gerald Berge, Gary Boughton, Peter Huibregtse, Richard Raemisch, John Ray, Sandra Hautumaki, Sgt. Judith Huibregtse, Cpt. Lebbeus Brown, Kelly Trumm, Ellen Ray, Todd Overbo and Vicki Sebastian, Defendants.

No. 04–C–632–C.

United States District Court, W.D. Wisconsin.

Oct. 14, 2004.

Garry A. Borzych, Madison, WI, pro se.

Charles D. Hoornstra, Assistant Attorney General, Madison, WI, for Defendants.

## ORDER

CRABB, District Judge.

This is a proposed civil action for monetary, declaratory and injunctive relief, brought under 42 U.S.C. § 1983. Plaintiff has paid the $150 filing fee but because he is a prisoner presently confined at the Wisconsin Secure Program Facility in Boscobel, Wisconsin, he is subject to the 1996 Prison Litigation Reform Act. He cannot proceed with this action unless the court grants him permission to proceed after screening his complaint pursuant to 28 U.S.C. § 1915A.

In addressing any pro se litigant's complaint, the court must read the allegations of the complaint generously. *Haines v. Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972). However, if the litigant is a prisoner, the 1996 Prison Litigation Reform Act requires the court to deny leave to proceed if the prisoner has had three or more lawsuits or appeals dismissed for lack of legal merit (except under specific circumstances that do not exist here), or if the prisoner's complaint is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law cannot be sued for money damages. This court will not dismiss plaintiff's case on its own motion for lack of administrative exhaustion, but if respondents believe that plaintiff has not exhausted the remedies available to him as required by § 1997e(a), they may allege his lack of exhaustion as an affirmative defense and argue it on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). *Massey v. Helman,* 196 F.3d 727 (7th Cir. 1999); *Perez v. Wisconsin Dept. of Corrections,* 182 F.3d 532 (7th Cir.1999).

In his complaint, plaintiff alleges the following facts.

### ALLEGATIONS OF FACT

Plaintiff Garry A. Borzych is currently confined at the Wisconsin Secure Program Facility in Boscobel, Wisconsin. Defendant Matthew J. Frank is Secretary of the Wisconsin Department of Corrections and defendant Richard Raemisch is the deputy secretary. Defendant Steve Casperson is Administrator of the Wisconsin Department of Adult Institutions. Defendant Ana M. Boatwright is the religious policy advisor for the Wisconsin Department of Corrections. Defendants John Ray and Sandra Hautumaki are corrections complaint examiners. Defendant Gerald Berge is the warden at the Secure Program Facility and defendant Peter Huibregtse is the deputy warden. Other defendants employed at the facility include defendant Gary Boughton, who is the security director, defendant Judith Huibregtse, the mail room sergeant, de-

fendant Lebbeus Brown, the gang coordinator, defendant Vicki Sebastian, the program director, defendant Todd Overbo, the chaplain and defendants Kelly Trumm and Ellen Ray, both of whom are inmate complaint examiners.

Plaintiff's religion is Odinism, which is also known as Asatry or Wotanism. Odinists do not worship a god but instead attempt to achieve "godhead." Plaintiff does not advocate racism, promote hate crimes or violence and does not attack others on the basis of their religion or ethnicity. Although he knows how to brew hooch and mead, he has never made any while incarcerated. There are several major Odinist holidays, observation of which is essential for attaining godhead. It is also essential for true Odinists to perform nightly rites. Since March 16, 2003, plaintiff has not been able to perform these nightly rites or observe the holidays.

### A. Denial of Odinist Texts

Not all texts proclaiming to be Odinist reflect the true beliefs of the religion. However, "Temple of Wotan," "Creed of Iron" and "The NPKA Book of Blotar" were written by true Odinists and plaintiff is unable to practice his religion without them. On May 29, 2003, plaintiff was told that he had to send his copies of "Temple of Wotan" and "Creed of Iron" out of the facility or they would be destroyed. On March 31, 2004, someone outside the prison sent plaintiff a copy of "The NPKA Book of Blotar" but defendants Judith Huibregtse, Overbo, Boughton and Brown prohibited plaintiff from having it because its author is allegedly a member of a disruptive group.

On April 4, 2004, plaintiff filed an inmate complaint, WSPF–2004–11312, alleging that he had been subject to libel when his book was rejected because of its potential disruptive content. Plaintiff complained that such a rejection implied that he advocates disruption. On April 12, 2004, defen-

dant Ellen Ray rejected plaintiff's complaint on the ground that the issue plaintiff raised had been addressed previously in plaintiff's earlier complaint, WSPF–2004–11310. On April 14, 2004, plaintiff appealed the rejection on the ground that his complaint in WSPF–2004–11310 was based on slander, not libel. On April 19, 2004, defendant Peter Huibregtse. affirmed the rejection.

On May 5, 2004, plaintiff filed inmate complaint WSPF–2004–14393. His complaint was based on the rejection of "The NPKA Book of Blotar." On May 7, 2004, defendant Ellen Ray rejected plaintiff's complaint on the ground that the issue he raised had already been addressed in his previous inmate complaints, WSPF–2004–1310 and WSPF–2004–11312. Three days later, plaintiff appealed the rejection, arguing that the issue had not been raised in those previous complaints; in WSPF–2004–11310, he complained of slander and his complaint in WSPF–2004–11312 was based on libel. Defendant Peter Huibregtse affirmed the rejection on June 8, 2004.

On June 13, 2004, plaintiff filed an inmate grievance, WSPF–2004–18883, in which he complained about the ban on the book "Temple of Wotan." Plaintiff noted that he needed this text in order to exercise his religion. On June 16, 2004, defendant Trumm rejected plaintiff's complaint on the ground that his grievance had already been addressed through plaintiff's previous complaint, GBCI–2003–11536. Plaintiff appealed the rejection two days later, arguing that his complaint GBCI–2003–11536 was not based on a blanket ban on the book the "Temple of Wotan." On July 1, 2004, defendant Peter Huibregtse affirmed the rejection.

On June 14, 2004, plaintiff filed an inmate grievance based on the ban of the book "Creed of Iron." In WSPF–2004–

19140, plaintiff stated that he needed this text in order to practice his religion. Two days later, defendant Trumm recommended dismissal of plaintiff's complaint because "Creed of Iron" is not a religious text but is connected to a disruptive group. On June 25, 2004, defendant Peter Huibregtse dismissed plaintiff's complaint. Plaintiff appealed the dismissal four days later. On July 16, 2004, defendant Hautumaki recommended affirmation of the dismissal because "Creed of Iron" is associated with a disruptive group. Defendant Raemisch adopted defendant Hautamaki's recommendation later that day.

### B. *Failure to Respond*

On April 1, 2004, plaintiff wrote to defendants Boughton and Overbo, requesting clarification of the reason for the rejection of "The NPKA Book of Blotar." The following day, defendant Boughton responded that defendant Overbo would respond to plaintiff's question. On April 11, 2004, plaintiff wrote to defendant Overbo, informing him of the Department of Corrections' blanket ban on Odinist literature. Defendant Overbo never responded to either of these letters. On April 18, 2004, plaintiff filed inmate complaint WSPF–2004–125531, in which he complained of defendant Overbo's refusal to respond to his correspondence. Three days later, defendant Ellen Ray recommended the dismissal of plaintiff's complaint. On May 3, 2004, defendant Peter Huibregtse adopted defendant Ellen Ray's recommendation and dismissed the complaint. On May 5, 2004, plaintiff appealed the dismissal to defendant John Ray, who recommended dismissal on the ground that plaintiff's grievance had already been addressed in WSPF–2004–11310. In plaintiff's view, WSPF–2004–11310 was based on slander, not defendant Overbo's refusal to respond to plaintiff's correspondence. On May 14, 2004, defendant Raemisch adopted the recommendation of defendant John Ray and

affirmed the dismissal of plaintiff's complaint.

On April 21, 2004, plaintiff wrote to defendant Boughton, informing him that defendant Overbo had never responded to plaintiff's letter dated April 1, 2004. Plaintiff reminded defendant Boughton that he had previously indicated that he had directed defendant Overbo to do so. Defendant Boughton never responded to this letter.

On July 7, 2004, plaintiff wrote a letter to defendant Boatwright, asking her to intervene to insure plaintiff's right to practice Odinism. Defendant Boatwright never responded.

### C. *"Azure Green"*

On April 27, 2004, plaintiff received a religious catalogue, "Azure Green," in the mail. Defendants Judith Huibregtse, Brown, Boughton and Overbo prohibited plaintiff from having the catalogue because it featured weapons. Plaintiff filed inmate complaint WSPF–2004–13666, alleging that rejection of the catalogue "Azure Green" was ludicrous and that it had been allowed at the facility previously. On May 4, 2004, defendant Ellen Ray recommended the dismissal of plaintiff's complaint. In her recommendation, defendant Ellen Ray noted that plaintiff could use the catalogue to educate himself about implements used in violent ritualistic acts, that plaintiff's possession of the catalogue would be counterproductive and that although the catalogue provides many items directed at Wiccans, it also includes products to assist Satanists conduct ritualistic killings. On May 5, 2004, defendant Peter Huibregtse dismissed plaintiff's complaint and plaintiff appealed the dismissal the following day. In his appeal, plaintiff asserted that Odinism was a non-violent religion and that defendant Peter Huibregtse's dismissal was "asinine." On May 17, 2004, defendant John Ray recommended affirmation

of the dismissal, noting that he agreed with the assessment of defendant Ellen Ray. On May 20, 2004, defendant Raemisch affirmed the dismissal.

### D. *Internal Management Procedure # 6*

On May 28, 2004, plaintiff filed inmate complaint WSPF–2004–17288, alleging that the Wisconsin Department of Corrections' Internal Management Procedure # 6 is unconstitutionally overbroad and suppresses protected speech. Defendants use this rule to justify the ban on "Creed of Iron," "Temple of Wotan," "The NPKA Book of Blotar" and "Azure Green." Defendant Ellen Ray rejected the complaint as untimely. Plaintiff appealed the rejection, arguing that the fourteen-day limitation period should not apply to his claim because it was based on an on-going violation. On June 8, 2004, defendant Peter Huibregtse affirmed defendant Ellen Ray's rejection of WSPF–2004–17288.

On June 4, 2004, plaintiff filed another inmate complaint, WSPF–2004–18240, in which he questioned why Muslims were permitted to have copies of the Koran even though that text does not conform with Internal Management Procedure # 6, Wis. Admin. Code § DOC 309.04(4) or Wis. Admin. Code § DOC 309.05(2)(b). In plaintiff's view, if Internal Management Procedure # 6 were implemented fully, neither the Bible nor the Koran would be permitted because both advocate hatred and violence. On June 9, 2004, defendant Ellen Ray recommended dismissal of plaintiff's claim, noting that "Muslim is one of the religions that is recognized by the [Department of Corrections]. As such, their book is allowed." Defendant Peter Huibregtse adopted defendant Ellen Ray's recommendation on June 24, 2004. On June 29, 2004, plaintiff appealed the dismissal. On July 9, 2004, defendant Hautumaki recommended dismissal and defendant Raemisch adopted this recommendation on July 15, 2004.

### E. *Conspiracy and Retaliation*

Defendants Raemisch, Ellen Ray, Peter Huibregtse and John Ray conspired for the purpose of insuring that plaintiff's complaints about limitations on his ability to exercise his religion would be denied or rejected. In furtherance of this objective, each recommended the dismissal or rejection of plaintiff's inmate complaints, WSPF–2004–3117, WSPF–2004, 11310, WSPF–2004–11312, WSPF–2004–12351, WSPF–2004–13666, WSPF–2004–14393 and WSPF–2004–17288. Plaintiff cannot exercise Odinism because of this conspiracy.

On May 28, 2004, plaintiff sent a letter regarding the blanket ban on the texts "Tower of Wotan," "Creed of Iron" and "The NPKA Book of Blotar" to defendants Franks, Casperson, Berge, Boughton, Overbo, Brown and Judith Huibregtse. In this letter, plaintiff indicated that without these books, he was unable to practice his religion. On May 29, 2004, plaintiff sent a second letter to defendants Franks, Casperson and Berge, informing them that the department's Internal Management Procedure # 6 is unconstitutionally overbroad. On May 30, 2004, plaintiff wrote defendants Franks, Casperson and Berge, asking them to permit him to have copies of these three Odinist texts. Plaintiff again indicated that he had no other means of practicing Odinism. Defendant Boatwright responded to these three letters but refused to address the substance of plaintiff's complaints.

On June 29, 2004, defendant Judith Huibregtse destroyed plaintiff's copy of "The NPKA Book of Blotar" in retaliation for a letter he sent her on May 28, 2004, complaining about the ban on Odinist texts. Defendant Boatwright encouraged defendant Judith Huibregtse to destroy plaintiff's text.

## OPINION

### A. *Inmate Complaint Examiners*

■ Before turning to the substance of plaintiff's complaint, I will address the potential liability of inmate complaint reviewers and examiners. Plaintiff has named as defendants all of the complaint examiners who reviewed his complaints. It is well established that liability under § 1983 must be based on a defendant's personal involvement in the constitutional violation. *See Gentry v. Duckworth,* 65 F.3d 555, 561 (7th Cir.1995); *Del Raine v. Williford,* 32 F.3d 1024, 1047 (7th Cir.1994); *Morales v. Cadena,* 825 F.2d 1095, 1101 (7th Cir. 1987); *Wolf–Lillie v. Sonquist,* 699 F.2d 864, 869 (7th Cir.1983). "A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary." *Wolf–Lillie,* 699 F.2d at 869.

In order to satisfy the personal involvement requirement, a plaintiff need not show direct participation. *Palmer v. Marion County,* 327 F.3d 588, 594 (7th Cir. 2003). However, he must show that the defendant knew about the violation and facilitated it, approved it, condoned it or turned a blind eye for fear of what he or she might see. *Morfin v. City of Chicago,* 349 F.3d 989, 1001 (7th Cir.2003). The Court of Appeals for the Seventh Circuit has held that a prison official may be held liable for a constitutional violation if he knew about it and had the ability to intervene but failed to do so. *Fillmore v. Page,* 358 F.3d 496, 505–06 (7th Cir.2004). However, this rule "is not so broad as to place a responsibility on every government employee to intervene in the acts of all other government employees." *Windle,* 321 F.3d at 663. Recently, the court of appeals made it clear that in order to succeed on a failure to intervene theory, a plaintiff must prove that the defendant failed to intervene with deliberate or reckless disregard for the plaintiff's constitutional right.

*Fillmore v. Page,* 358 F.3d at 505–06 (7th Cir.2004).

■ If inmate complaint examiners have authority to find in favor of an inmate on the ground that they believe a regulation or practice is unconstitutional, this might be sufficient to satisfy the personal involvement requirement. However, if they have such discretion, then they are entitled to absolute immunity for their decisions. It is well settled that prison officials are entitled to immunity for acts that are functionally equivalent to those of judges. *Wilson v. Kelkhoff,* 86 F.3d 1438, 1443–1445 (7th Cir.1996).

■ Absolute immunity immunizes government officials from liability completely and is accorded to public officials only in limited circumstances. *Burns v. Reed,* 500 U.S. 478, 486–87, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). In most instances, qualified immunity is regarded as sufficient to protect government officials in the exercise of their duties. *Buckley v. Fitzsimmons,* 509 U.S. 259, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993). Qualified immunity protects officials from liability for the performance of discretionary functions when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). "Truly judicial acts" are among the few functions accorded the more encompassing protections of absolute immunity. *Forrester v. White,* 484 U.S. 219, 226–27, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988).

In determining whether government officials are entitled to absolute immunity, courts apply a functional approach, evaluating whether the official's action is functionally comparable to that of judges. *Wilson,* 86 F.3d at 1445. If the acts are ministerial and unrelated to the decision

making process, they are not covered. *Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 113 S.Ct. 2167, 124 L.Ed.2d 391 (1993) (court reporter not entitled to absolute immunity for failing to provide a transcript promptly even though task is "part of the judicial function"). In deciding whether a government official is entitled to absolute immunity, a court must look at " 'the nature of the function performed, not the identity of the actor who performed it.' " *Buckley*, 509 U.S. at 269, 113 S.Ct. 2606 (quoting *Forrester*, 484 U.S. at 229, 108 S.Ct. 538).

Under the inmate complaint review system described in Wis. Admin. Code Ch. DOC 310, an inmate complaint examiner may investigate inmate complaints, reject them for failure to meet filing requirements or recommend to the appropriate reviewing authority that they be granted or dismissed. Wis. Admin. Code § DOC 310.07(2). If the examiner makes a recommendation, the reviewing authority has the authority to dismiss, affirm or return the complaint for further investigation. Wis. Admin. Code § DOC 310.12. If an inmate appeals the decision of the reviewing authority, the corrections complaint examiner is required to conduct additional investigation where appropriate and make a recommendation to the secretary of the Wisconsin Department of Corrections. Wis. Admin. Code § DOC 310.13. Within forty-five days after a recommendation has been made, the secretary must accept it in whole or with modifications, reject it and make a new decision or return it for further investigation.

"[T]he 'touchstone' for [the applicability of the doctrine of judicial immunity] has been 'performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights.' " *Snyder v. Nolen*, 380 F.3d 279, 286 (7th Cir.2004) (quoting *Antoine*, 508 U.S. at 435–36, 113 S.Ct. 2167 (additional citations omitted)). When inmate complaint review personnel reject inmate complaints for procedural deficiencies or dismiss them as unmeritorious, they perform an adjudicatory function and therefore, are entitled to absolute immunity for those acts. *Cf. Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (absolute immunity available for conduct of prosecutors that is "intimately associated with the judicial phase of the criminal process"); *Walrath v. United States*, 35 F.3d 277 (7th Cir.1994) (parole board members are entitled to absolute immunity for making parole revocation decisions); *Tobin for Governor v. Illinois State Board of Elections*, 268 F.3d 517 (7th Cir.2001) (members of state board of elections entitled to absolute immunity for refusing to certify political candidates; decision was product of process much like court trial). Also, absolute immunity is accorded officials when they make recommendations to dismiss or to affirm dismissals. *Tobin*, 268 F.3d at 522 (officials making recommendation entitled to immunity just as magistrate judge who makes recommendation to district court would be); *Wilson*, 86 F.3d at 1445 (absolute immunity protects against both actual decision making and any act that is "part and parcel" of the decision making process).

■ Because I conclude that the persons making recommendations for the disposition of inmate complaints are entitled to absolute immunity, plaintiff will not be allowed to proceed against defendants Hautumaki, Trumm, John Ray or Ellen Ray. This conclusion is consistent with the purpose behind affording absolute immunity, which is to free the judicial process from harassment and intimidation. *Forrester*, 484 U.S at 226, 108 S.Ct. 538 ("the nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovern-

able desires that people can have"). The potential for harassment or intimidation is particularly high in the prison setting given the unusually litigious tendencies of inmate populations.

Although the Wisconsin Administrative Code empowers inmate complaint examiners and corrections complaint examiners the authority to conduct investigations, plaintiff does not complain about the execution of any such investigation. Therefore, I will reserve for another day the question whether inmate complaint review personnel are entitled to absolute immunity for conducting investigations.

## B. *Religious Freedom*

### 1. *First Amendment*

#### a. "The NPKA Book of Blotar"

■ Plaintiff contends that defendants denied him the right to possess "The NPKA Book of Blotar," an Odinist text without which he is unable to practice his religion. In *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987), the Supreme Court set out the standard to be applied in considering a prisoner's First Amendment free exercise claims. The Court held that prison restrictions that infringe on an inmate's exercise of his religion will be upheld if they are reasonably related to a legitimate penological interest. *Id.* at 349, 107 S.Ct. 2400. The Court of Appeals for the Seventh Circuit has identified several factors that can be used in applying the "reasonableness" standard:

1. Whether a valid, rational connection exists between the regulation and a legitimate government interest behind the rule;

2. Whether there are alternative means of exercising the right in question that remain available to prisoners;

3. The impact accommodation of the asserted constitutional right would have

on guards and other inmates and on the allocation of prison resources; and

4. Although the regulation need not satisfy a least restrictive alternative test, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable.

*Al–Alamin v. Gramley*, 926 F.2d 680, 685 (7th Cir.1991) (quoting *Williams v. Lane*, 851 F.2d 867, 877 (7th Cir.1988)) (quotation marks omitted).

Although defendants may be able to satisfy the rational basis standard by showing that they have a legitimate penological interest in denying plaintiff these texts, *e.g.*, *Haff v. Cooke*, 923 F.Supp. 1104 (E.D.Wis. 1996) (upholding confiscation of material that could incite racial hostility or violence), it would be improper to characterize plaintiff's claim as legally frivolous or malicious or as failing to state a claim in the absence of evidence that the restriction is reasonable. *Alston v. DeBruyn*, 13 F.3d 1036, 1039–40 (7th Cir.1994) (concluding that district court abused its discretion by dismissing plaintiff's free exercise complaint as frivolous where record did not contain evidence of prison's need for restriction). Plaintiff's allegation that defendants denied him a copy of "The NPKA Book of Blotar" is sufficient to support a First Amendment claim at this stage. Accordingly, he will be allowed to proceed against defendants Frank, Casperson, Boatwright, Berge, Boughton, Peter Huibregtse, Judith Huibregtse, Raemisch, Brown and Overbo on this theory.

#### b. "Tower of Wotan" and "Creed of Iron"

Plaintiff's claims that he was denied copies of "Tower of Wotan" and "Creed of Iron" raise an arguable First Amendment violation. His claim is based on a letter he received that was sent on May 29, 2003, in which he was told that the books would be destroyed if he did not send them out of

the institution. Plaintiff brought this same claim against a slightly different set of defendants in a previous case in this court. *Borzych v. Frank*, 03–C–0575–C, 2004 WL 67642 (W.D.Wis. January 5, 2004) (plaintiff stated free exercise claim when he alleged that he received May 29, 2003 letter informing him that his copies of "Tower of Wotan" and "Creed of Iron" would be sent out of institution). In that case, I allowed plaintiff to proceed against defendants Frank and Casperson, among others. The similarity of the two cases raises the question whether plaintiff can proceed on these claims in this case or whether the doctrine of res judicata bars him from doing so.

In general, "[t]he doctrine of res judicata (claim preclusion) requires litigants to join in a single suit all legal and remedial theories that concern a single transaction." *Perkins v. Board of Trustees of the Univ. of Ill.*, 116 F.3d 235, 236 (7th Cir.1997). It bars a subsequent suit if the claim upon which the suit is based arises from the "same incident, events, transaction, circumstances, or other factual nebula as a prior suit that had gone to final judgment." *Okoro v. Bohman*, 164 F.3d 1059, 1062 (7th Cir.1999). The three requirements of claim preclusion under federal law are: (1) an identity of parties or their privies; (2) an identity of causes of action; and (3) a final judgment on the merits. *Central States, Southeast and Southwest Areas Pension Fund v. Hunt Truck Lines, Inc.*, 296 F.3d 624, 628 (7th Cir.2002). When these elements are satisfied, the judgment in the earlier suit bars further litigation of issues that were either raised or could have been raised therein. *Kratville v. Runyon*, 90 F.3d 195, 197–98 (7th Cir.1996). Although the basic rule is that claim preclusion is an affirmative defense, 18 Charles A. Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice and Procedure* § 4405 (1981), the Court of Appeals for the Seventh Circuit has held that a court may raise an affirma-

tive defense on its own if it is clear from the face of the complaint that the defense applies. *Gleash v. Yuswak*, 308 F.3d 758, 760–61 (7th Cir.2002).

In *Borzych*, 03–C–0575–C, June 11, 2004, I dismissed plaintiff's claims with prejudice upon stipulation of the parties. Such a dismissal is treated as a final judgment on the merits for purposes of claim preclusion. 18 *Moore's Federal Practice*, § 131.30[3][c] (3d ed.2004). *See also Matter of Energy Co-op., Inc.*, 814 F.2d 1226, 1234 (7th Cir.1987) ("suit was dismissed 'with prejudice,' indicating that the order barred any subsequent suits on the same cause of action."). *Cf.* 18 *Moore's Federal Practice* § 132.03[2][I] (3d ed.2004) (consent judgments do not satisfy the "actually litigated" requirement necessary under the doctrine of issue preclusion, or non-mutual claim preclusion). I conclude that the earlier suit prevents plaintiff from raising this claim in this case. Plaintiff will not be allowed to proceed against defendants Frank or Casperson on his claim that the denial of the texts "Tower of Wotan" and "Creed of Iron." All three elements of claim preclusion are satisfied: plaintiff raises the same claim against the same parties as he did in a previous suit, which was dismissed with prejudice.

In this case, however, plaintiff has added new defendants who were not parties in his earlier case: defendants Boatwright, Berge, Boughton, Brown, Peter Huibregtse, Raemisch and Overbo, each of whom may be involved in the promulgation of religious policies. Although these defendants were not named parties in plaintiff's earlier action, the doctrine of claim preclusion extends to those in privity with parties. Privity is a concept often noted for its elusive nature. It is typically found when the interests of a previously named party are closely aligned with those of the party invoking the doctrine. *People Who*

*Care v. Rockford Bd. of Education,* 68 F.3d 172, 177 (7th Cir.1995). It is not clear from the face of plaintiff's complaint whether these three defendants were in privity with any of the defendants against whom plaintiff was allowed to proceed on his free exercise and RLUIPA claims in his earlier case. Although I will allow plaintiff to proceed against defendants Boatwright, Berge, Boughton, Brown, Peter Huibregtse, Raemisch and Overbo at this point, defendants are free to raise claim preclusion as an affirmative defense.

**c. "Azure Green"**

██ Plaintiff alleges that he was not allowed to have a copy of "Azure Green," a catalogue in which items related to Wiccanism, Satanism and Odinism are sold. In contrast to his claims based on the ban on "The NPKA Book of Blotar," "Temple of Wotan" and "Creed of Iron," plaintiff does not allege or suggest that he either uses or needs a copy of the "Azure Green" catalogue in order to practice his religion. Because there is no suggestion that the ban on this catalogue affected plaintiff's rights under the free exercise clause, he will not be allowed to proceed on this claim.

**2.** *Religious Land Use and Institutionalized Persons Act*

██ The Religious Land Use and Institutionalized Persons Act affords prisoners engaged in religious conduct federal statutory protections above and beyond those embodied in the First Amendment. *Charles v. Verhagen,* 220 F.Supp.2d 937, 943 (W.D.Wis.2002), *aff'd,* 348 F.3d 601 (7th Cir.2003) (upholding act's constitutionality). The act prohibits governmental imposition of a "substantial burden on the religious exercise" of a prisoner, unless the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that

compelling governmental interest." 42 U.S.C. § 2000cc–1. The rule

applies in any case in which—

(1) the substantial burden is imposed in a program or activity that receives Federal financial assistance; or

(2) the substantial burden affects, or removal of that substantial burden would affect, commerce with foreign nations, among the several States, or with Indian tribes.

It is to be construed broadly to favor the protection of inmates' religious exercise. 42 U.S.C. § 2000cc–3(g).

Although there is little case law interpreting the act's key terms, its predecessor, the Religious Freedom Restoration Act, had an analogous requirement that plaintiffs demonstrate a "substantial burden" on their exercise of religion before defendants were called upon to show a compelling interest furthered by the least restrictive means available. In *Mack v. O'Leary,* 80 F.3d 1175 (7th Cir.1996), *judgment vacated and remanded by O'Leary v. Mack,* 522 U.S. 801, 118 S.Ct. 36, 139 L.Ed.2d 5 (1997), the Court of Appeals for the Seventh Circuit elaborated on what the Religious Freedom Restoration Act meant by "substantially burdening" a person's exercise of religion. Although the court of appeals' decision in that case was vacated after the Supreme Court invalidated the RFRA as it applied to the states in *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), the court of appeals' reasoning in *Mack* is instructive nonetheless. *Charles,* 348 F.3d at 606 (in enacting RFRA and RLUIPA, Congress intended to protect inmates from substantial burdens in practicing their religions). In *Mack,* the court of appeals held that

a substantial burden on the free exercise of religion . . . is one that forces adherents of a religion to refrain from religiously motivated conduct, inhibits or

constrains conduct or expression that manifests a central tenet of a person's religious beliefs, or compels conduct or expression that is contrary to those beliefs.

80 F.3d at 1179; *but see Henderson v. Kennedy,* 253 F.3d 12, 17 (D.C.Cir.2001) (rejecting this definition of "substantial burden" as "read[ing] out of RFRA the condition that only *substantial* burdens on the exercise of religion trigger the compelling interest requirement") (emphasis added).

■ I understand plaintiff to allege that he is unable to attain his religious goal of achieving "godhead" unless he is allowed to possess "Temple of Wotan," "Creed of Iron" or "The NPKA Book of Blotar." An act that prevents an inmate from achieving his ultimate religious goal meets the "substantial burden" test set forth in *Mack,* 80 F.3d at 1179; *Lindell v. McCallum,* 352 F.3d 1107, 1109–10 (7th Cir.2003) (denial of Odinist literature states claim under RLUIPA). Plaintiff will be allowed to proceed against defendants Frank, Raemisch, Casperson, Boatwright, Berge, Peter Huibregtse, Judith Huibregtse, Overbo, Boughton and Brown on his claim that they violated RLUIPA by prohibiting him from having a copy of "The NPKA Book of Blotar."

Plaintiff will not be allowed to proceed against defendants Frank or Casperson for the denial of "Temple of Wotan" or "Creed of Iron"; these claims are barred under the doctrine of claim preclusion. *Borzych,* 03–C–0575–C. However, he will be allowed to proceed against defendants Boatwright, Berge, Boughton, Brown, Peter Huibregtse, Raemisch and Overbo because it is not clear that these defendants were in privity with any parties in plaintiff's earlier complaint. Finally, plaintiff will not be allowed to proceed on his claim that he was denied a copy of "Azure Green" because there is no indication that this deprivation substantially burdened his ability to practice Odinism.

3. *Establishment clause*

■ The establishment clause of the First Amendment is violated when "the challenged governmental practice either has the purpose or effect of 'endorsing' religion." *County of Allegheny v. American Civil Liberties Union,* 492 U.S. 573, 592, 109 S.Ct. 3086, 106 L.Ed.2d 472 (1989) (citations omitted). The fact that government may not "endorse" religion means that it is precluded "from conveying or attempting to convey a message that religion or a particular religious belief is favored or preferred." *Id.* at 593, 109 S.Ct. 3086 (citations omitted); *Wallace v. Jaffree,* 472 U.S. 38, 52–53, 105 S.Ct. 2479, 86 L.Ed.2d 29 (1985) (Supreme Court "has unambiguously concluded that the individual freedom of conscience protected by the First Amendment embraces the right to select any religious faith or none at all"). Plaintiff contends that defendants violated the establishment clause by permitting inmates to have copies of the Bible or Koran but not Odinist texts.

Plaintiff's claim may be barred under the doctrine of claim preclusion. In *Borzych,* 03–C–0575–C, I allowed plaintiff to proceed against defendants Frank and Casperson on his claim that a segregation handbook violated the establishment clause because it allowed inmates in segregation to have copies of the Bible or Koran but not Odinist literature. In this case, plaintiff's complaint is more vague; it is not clear whether he is complaining about the segregation policy again or whether he is challenging some other prison practice or policy under which Muslim and Christian texts are permitted but Odinist books are prohibited. (This is, of course, assuming that Odinism is a religion. For purposes of determining whether plaintiff has

stated a claim, I will assume this to be the case. *See, e.g., Lindell v. McCallum,* 352 F.3d 1107, 1110 (7th Cir.2003) ("We are given no reason to think that the fact that Wotanism is not a mainstream religion is disqualifying, though that is another issue we need not decide.") (citations omitted).)

Because it is not clear at this early stage whether plaintiff's claim is identical to the one he raised in *Borzych,* 03–C–578–C, I will allow him to proceed against defendants Frank and Casperson. In addition, I will allow plaintiff to proceed against defendants Boatwright, Berge, Boughton, Brown, Peter Huibregtse, Raemisch and Overbo because each occupies a position in which he may have had some responsibility over the challenged religious policy. Again, defendants are free to raise claim preclusion as an affirmative defense.

### C. *Free Speech*

#### 1. *Retaliation*

 Prison officials may not retaliate against inmates for the exercise of a constitutional right, *Babcock v. White,* 102 F.3d 267, 275 (7th Cir.1996), and complaints about prison conditions may be protected by the First Amendment. *Walker v. Thompson,* 288 F.3d 1005 (7th Cir.2002). To raise a claim of retaliation, it is insufficient for an inmate simply to allege the ultimate fact of retaliation, *Higgs v. Carver,* 286 F.3d 437, 439 (7th Cir.2002), but he need not allege a chronology of events from which retaliation may be inferred. *Walker,* 288 F.3d at 1009. Rather, he need only identify the act of retaliation and the grievance that sparked the retaliatory act. *Higgs,* 286 F.3d at 439. In alleging that defendants Judith Huibregtse and Boatwright retaliated against him for complaining about the ban on Odinist texts in a letter he sent to defendants Franks, Casperson, Berge, Boughton, Overbo, Brown and Judith Huibregtse dated May 28, 2004, by destroying his copy of "The NPKA Book of Blotar,"

plaintiff has identified the act of retaliation and the grievance that triggered the retaliation. Accordingly, he will be allowed to proceed on this claim against defendants Judith Huibregtse and Boatwright.

#### 2. *Internal management policy # 6*

 I understand plaintiff to allege that Wisconsin Department of Corrections Internal Management Procedure # 6 suppresses protected speech; defendants rely on it to justify banning Odinist literature. The Supreme Court has recognized that inmates retain a limited constitutional right to receive and read materials that originate outside the prison. *E.g., Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987); *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974); *Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). In *Thornburgh,* 490 U.S. at 413, 109 S.Ct. 1874, the Court held that "[r]egulations affecting the sending of a 'publication' ... to a prisoner ... are 'valid if [they are] reasonably related to legitimate penological interests.' "

 To determine whether a regulation meets the reasonably related test, a court should consider four factors: (1) whether a valid, rational connection exists between the regulation and a legitimate governmental interest; (2) whether the prisoner has available alternative means of exercising the right in question; (3) whether accommodation of the asserted right will have negative effects on guards, inmates or prison resources; and (4) whether there are obvious, easy alternatives at a minimal cost. At this stage of the proceedings I cannot say that respondents will be able to satisfy this standard. Accordingly, plaintiff will be allowed to proceed on his claim against defendants Frank,

Casperson, Boatwright, Berge, Boughton, Peter Huibregtse, Raemisch, Judith Huibregtse, Brown, and Overbo.

### D. *Conspiracy*

Claims of conspiracies to effect deprivations of civil or constitutional rights may be brought in federal court under 42 U.S.C. § 1983 or § 1985(3). In pleading a conspiracy, it is sufficient for a plaintiff to indicate "the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker*, 288 F.3d at 1007. Plaintiff contends that defendants Raemisch, Ellen Ray, Peter Huibregtse and John Ray conspired for the purpose of insuring that he would be unable to practice Odinism and in furtherance of this objective, each recommended the dismissal or rejection of plaintiff's inmate complaints, WSPF–2004–3117, WSPF–2004, 11310, WSPF–2004–11312, WSPF–2004–12351, WSPF–2004–13666, WSPF–2004–14393 and WSPF–2004–17288. Although plaintiff has identified the parties, general purpose and the approximate time frame of the alleged conspiracy, he will not be permitted to proceed on his claim of conspiracy because I have determined that defendants are absolutely immune for their acts of rejecting or dismissing inmate complaints.

### E. *Equal Protection*

The equal protection clause of the Fifth Amendment prohibits state actors from treating similarly situated individuals differently because of their membership in a suspect class or "definable minority" or because of the exercise of a fundamental right. *Nabozny v. Podlesny*, 92 F.3d 446, 457 (7th Cir.1996); *see also Smith on Behalf of Smith v. Severn*, 129 F.3d 419, 429 (7th Cir.1997). Even individuals not claiming to be a part of any identifiable group may assert an equal protection claim under a "class of one" theory if there is no rational basis for the differential treat-

ment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). It is enough to state such a claim if a plaintiff "suggests [that] discriminatory motives impelled discriminatory treatment of him." *Antonelli v. Sheahan*, 81 F.3d 1422, 1433 (7th Cir. 1996).

In this case, plaintiff contends that unlike Christian and Muslim inmates, he was not permitted to have the central texts of his religion because defendants discriminated against him as a class of one. Plt.'s Cpt., dkt # 1, at 25. Although plaintiff articulates a class of one theory, his allegations are also sufficient to state a claim that he was denied copies of certain books because of his religious affiliation. The distinction is important because "[t]he 'class of one' plaintiff bears the burden of proving that he has suffered intentional, irrational, and arbitrary discrimination." *Bell v. Duperrault*, 367 F.3d 703, 707 (7th Cir.2004). Defendants could defeat the claim simply by putting forth a rational basis for their actions. *Village of Willowbrook*, 528 U.S. at 564, 120 S.Ct. 1073. However, because religion is a suspect classification and because an individual has a fundamental right to exercise his religion, defendants' actions will be evaluated under heightened scrutiny if plaintiff can show that they discriminated against him intentionally because of his religious affiliation. *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 766 (7th Cir.2003) (citing *Griffin High School v. Illinois High School Assoc.*, 822 F.2d 671, 674 (7th Cir.1987)); *Zehner v. Trigg*, 133 F.3d 459, 463 (7th Cir.1997).

Under either approach, plaintiff's allegations are sufficient to state an equal protection claim under the minimum pleading requirements of Fed. R. Civ. P 8(a). *See Shah v. Inter–Continental Hotel Chicago Operating Corp.*, 314 F.3d 278, 282

(7th Cir.2002); *Walker*, 288 F.3d at 1007 ("[T]here is no requirement in federal suits of pleading the facts or the elements of a claim."). Accordingly, plaintiff will be allowed to proceed on this claim against defendants Frank, Casperson, Boatwright, Berge, Boughton, Peter Huibregtse, Raemisch, Judith Huibregtse, Brown, and Overbo.

### F. *Due Process*

As he did in his previous complaint, plaintiff suggests that defendants violated his rights under the Fourteenth Amendment but does not develop this claim. As I informed plaintiff in screening his earlier complaint, a procedural due process claim against government officials requires proof of inadequate procedures and interference with a liberty or property interest. *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989). Plaintiff has alleged that certain defendants prevented him from possessing certain Odinist texts. However, "the deprivation by the state of a constitutionally protected interest in life, liberty, or property is not in and of itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Doe v. Heck*, 327 F.3d 492, 526 (7th Cir. 2003) (citations and quotations omitted). As long as state remedies are available for the loss of property, neither intentional nor negligent deprivation of property gives rise to a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). In *Hudson*, the Supreme Court held that an inmate has no due process claim for the intentional deprivation of property if the state has made available to him a suitable post-deprivation remedy. In *Daniels*, the Court concluded that a due process claim does not arise from a state official's negligent act that causes unintended loss of property or injury to property.

The state of Wisconsin provides several post-deprivation procedures for challenging the taking of property. According to Article I, § 9 of the Wisconsin Constitution,

> Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without delay, conformably to the laws.

Sections 810 and 893 of the Wisconsin Statutes provide plaintiff with replevin and tort remedies. Section 810.01 provides a remedy for the retrieval of wrongfully taken or detained property. Section 893 contains provisions concerning tort actions to recover damages for wrongfully taken or detained personal property and for the recovery of the property. Because plaintiff has post-deprivation procedures available to him, he will be denied leave to proceed on a due process claim.

### G. *State Law Claims*

#### 1. *Libel*

I understand plaintiff to allege that defendants Judith Huibregtse, Overbo, Boughton and Brown subjected him to libel when they rejected the book "The NPKA Book of Blotar," asserting that the author is a member of a disruptive group. Under Wisconsin law, a defamation action, whether based on libel or slander, has the following three elements: (1) a false statement concerning another, (2) communicated by speech, conduct, or in writing to someone other than the person defamed, and (3) is unprivileged and "tends to harm one's reputation so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her." *Hart v. Bennet*,

2003 WI App. 231 ¶ 21, 267 Wis.2d 919, 941, 672 N.W.2d 306, 317; *Teff v. Unity Health Plans Insurance Corp.*, 2003 WI App. 115, ¶ 40, 265 Wis.2d 703, 731, 666 N.W.2d 38, 52 n. 6. The alleged statement concerns the author of "The NPKA Book of Blotar" and not plaintiff; plaintiff lacks standing to pursue a claim on behalf of the book's author. Even if the statement could somehow be construed to impute disruptive tendencies to plaintiff, he has not alleged that defendants communicated the reason for rejecting the book to anyone other than plaintiff. Accordingly, plaintiff will be denied leave to proceed on a defamation claim for libel.

2. *Wis. Stat. §§ DOC 309.61(1)(a) and (b)*

Plaintiff alleges that defendants violated Wis. Stat. §§ DOC 309.61(1)(a) and (b) by not allowing him to possess Odinist literature. Wis. Admin. Code § DOC 309.61(1)(a) forbids the department of corrections to discriminate against an inmate or a group of inmates on the basis of their religion and § 309.61(1)(b) allows inmates to pursue lawful religious practices. Plaintiff brought this claim against defendants Frank and Casperson in *Borzych*, 03–C–0575–C and accordingly, is barred from pursuing it against them again. However, I will allow plaintiff to proceed against defendants Raemisch, Boatwright, Berge, Peter Huibregtse, Judith Huibregtse, Overbo, Boughton and Brown because they were not named in plaintiff's earlier suit and it is not clear they are in privity with any party to that case. Because these claims arise from the same facts governing plaintiff's federal claims, supplemental jurisdiction exists. 28 U.S.C. § 1367(a).

### H. *Failure to Respond*

■ Plaintiff alleges that defendants Boughton and Overbo failed to respond to his informal correspondence regarding the ban on Odinist literature. Plaintiff will be denied leave to proceed on this claim; he has no constitutional, federal or state right to receive a response to his informal communications to the facility security director or chaplain.

### I. *Defendant Sebastian*

As noted above, a government official must be personally involved with the alleged violation in order to be subject to liability under § 1983. *Gentry*, 65 F.3d at 561; *Del Raine*, 32 F.3d at 1047; *Morales*, 825 F.2d at 1101; *Wolf–Lillie*, 699 F.2d at 869. Plaintiff has failed to allege any facts showing that defendant Sebastian had any involvement with any of the alleged violations. Accordingly, she will be dismissed from this action.

### ORDER

IT IS ORDERED that:

1. Plaintiff Gary Borzych is GRANTED leave to proceed on his claims that

(a) Defendants Matthew Frank, Steve Casperson, Ana Boatwright, Gerald Berge, Gary Boughton, Peter Huibregtse, Judith Huibregtse, Richard Raemisch, Lebbeus Brown and Todd Overbo violated his First Amendment right to free exercise by depriving him of a copy of "The NPKA Book of Blotar";

(b) Defendants Boatwright, Berge, Boughton, Brown, Peter Huibregtse, Raemisch and Overbo violated plaintiff's First Amendment right to free exercise by depriving him of copies of "Tower of Wotan" and "Creed of Iron";

(c) Defendants Frank, Casperson, Boatwright, Berge, Boughton, Peter Huibregtse, Judith Huibregtse, Brown, Raemisch and Overbo violated the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc–1, by depriving him of his copies of "The NPKA Book of Blotar";

(d) Defendants Boatwright, Berge, Boughton, Brown, Peter Huibregtse, Raemisch and Overbo violated Religious Land Use and Institutionalized Persons Act by depriving plaintiff of copies of "Tower of Wotan" and "Creed of Iron";

(e) Defendants Frank, Casperson, Boatwright, Berge, Boughton, Brown, Peter Huibregtse, Raemisch and Overbo violated the establishment clause by allowing inmates to have copies of the Koran or the Bible but not Odinist literature;

(f) Defendants Judith Huibregtse and Boatwright retaliated against plaintiff for sending a letter to defendants Franks, Casperson, Berge, Boughton, Overbo, Brown and Judith Huibregtse, complaining of the ban on Odinist texts by destroying his copy of "The NPKA Book of Blotar";

(g) defendants Frank, Casperson, Boatwright, Berge, Boughton, Peter Huibregtse, Raemisch, Hautumaki, Judith Huibregtse, Brown and Overbo violated plaintiff's First Amendment right to free speech by prohibiting him from possessing Odinist texts;

(h) Defendants Frank, Casperson, Boatwright, Berge, Boughton, Peter Huibregtse, Raemisch, Judith Huibregtse, Brown and Overbo violated the equal protection clause when they allowed Christians and Muslims to have copies of book central to their religion but did not allow plaintiff to have copies of Odinist texts;

(i) Defendants Raemisch, Boatwright, Berge, Peter Huibregtse, Judith Huibregtse, Overbo, Boughton and Brown violated Wis. Stat. §§ DOC 309.61(1)(a) and (b) by not allowing plaintiff to possess Odinist literature.

2. Plaintiff is DENIED leave to proceed on his claims that

(a) Defendants violated his First Amendment right to free exercise and the Religious Land Use and Institutionalized Persons Act by prohibiting him from having a copy of the catalogue "Azure Green";

(b) Defendants Raemisch, Ellen Ray, Peter Huibregtse and John Ray conspired to prevent plaintiff from being able to practice Odinism;

(c) Defendants violated the due process clause by destroying his copy of "The NPKA Book of Blotar";

(d) Defendants Judith Huibregtse, Overbo, Boughton and Brown subjected plaintiff to libel by indicating that the author of "The NPKA Book of Blotar" is a member of a disruptive group;

(e) Defendants Boughton and Overbo failed to respond to plaintiff's letters regarding the ban on Odinist literature.

3. Defendants Vicki Sebastian, John Ray, Hautumaki, Trumm, and Ellen Ray are DISMISSED; plaintiff has failed to state a claim against defendant Hautumaki and defendants John Ray, Hautumaki, Trumm, and Ellen Ray are entitled to absolute immunity.

4. Plaintiff is responsible for serving his complaint upon the defendants. A memorandum describing the procedure to be followed in serving a complaint on state officials is attached to this order, along with 10 copies of plaintiff's complaint and blank waiver of service of summons forms.

5. For the remainder of this lawsuit, plaintiff must send defendants a copy of every paper or document that he files with the court. Once plaintiff learns the name of the lawyer that will be representing the defendants, he should serve the lawyer directly rather than defendants. The court will disregard documents plaintiff submits that do not show on the court's copy that plaintiff has sent a copy to defendant or to defendant's attorney.

6. Plaintiff should keep a copy of all documents for his own files. If he is un-

able to use a photocopy machine, he may send out identical handwritten or typed copies of his documents.